# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF FLORIDA

DEMOCRATIC EXECUTIVE
COMMITTEE OF FLORIDA, and BILL
NELSON FOR U.S. SENATE,

          Plaintiffs,

v.

KEN DETZNER, in his official capacity as
Florida Secretary of State,

          Defendant.

Case No._____

---

## COMPLAINT FOR INJUNCTIVE AND
## DECLARATORY RELIEF

---

Plaintiffs the DEMOCRATIC EXECUTIVE COMMITTEE OF FLORIDA ("DECF") and BILL NELSON FOR U.S. SENATE ("Nelson Campaign") (collectively, "Plaintiffs"), by and through the undersigned attorneys, file this COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF against Defendant KEN DETZNER, in his official capacity as Florida Secretary of State ("Defendant"), and allege upon information and belief as to all others as follows:

1

## NATURE OF THE CASE

1.      "No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even- the most basic, are illusory if the right to vote is undermined." *Wesberry v. Sanders,* 376 U.S. 1, 17 (1964). Plaintiffs bring the instant lawsuit, on an emergency and expedited basis, to protect this right and to prevent the disenfranchisement of tens of thousands of Florida voters at risk of disenfranchisement in the 2018 general election if Defendant is not enjoined from rejecting their vote-by-mail ("VBM") and provisional ballots on the basis of a standardless signature matching process, if the votes of voters who cast such ballots are not counted, and if the upcoming canvassing deadline is not tolled until this matter can be heard and relief can be granted.

2.      Ending by no later than noon on November 10, local canvassing boards throughout the State will review and, unless relief is granted, unconstitutionally reject the VBM and provisional ballots of tens of thousands of Florida voters. In deciding whether to accept and count these ballots, or to reject and discard the ballots and disenfranchise the voters who cast them, local canvassing boards will engage in a demonstrably standardless, inconsistent, and unreliable signature matching process that has been shown to result in the

2

disproportionate rejection of VBM and provisional ballots cast by ethnic and racial minorities, as well as young, first-time voters.

3.     This entirely standardless, inconsistent, and unreliable signature matching process, which has a disparate impact on People of Color and young, first time voters, violates the prohibition against undue burdens on the right to vote, enshrined under the First and Fourteenth Amendments to the U.S. Constitution, and subjects Florida voters to disparate treatment and inconsistent standards in violation of the Fourteenth Amendment's Equal Protection Clause.

## JURISDICTION AND VENUE

4.     Plaintiffs bring this action under 42 U.S.C. §§ 1983 and 1988 to redress the deprivation under color of state law of rights secured by the United States Constitution.

5.     This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 because the matters in controversy arise under the Constitution and laws of the United States.

6.     This Court has personal jurisdiction over Defendant, who is sued in his official capacity only.

7.     Venue is proper in this Court under 28 U.S.C. § 1391(b), because a substantial part of the events that gave rise to Plaintiffs' claim occurred in this

judicial district.

8.     This Court has the authority to enter a declaratory judgment and to provide preliminary and permanent injunctive relief pursuant to Rules 57 and 65 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202.

## PARTIES

9.     Plaintiff DEMOCRATIC EXECUTIVE COMMITTEE OF FLORIDA ("DECF"), is the statewide organization representing Democratic candidates and voters throughout the State of Florida within the meaning of Florida Statute § 103.121 and all other applicable provisions of the election laws. DECF's purpose is to elect Democratic Party candidates to public office throughout Florida. To accomplish its purpose, DECF engages in vitally important activities, including supporting Democratic Party candidates in national, state, and local elections through fundraising and organizing efforts; protecting the legal rights of voters; and ensuring that all voters have a meaningful ability to cast ballots in Florida. DECF has millions of members and constituents from across Florida, including millions of Floridians who are registered with the Florida Department of State's Division of Elections as Democrats, and many other Floridians who regularly support and vote for candidates affiliated with the Democratic Party. Among its members and constituents are Florida voters whose

4

provisional or VBM ballots will be rejected, and who will therefore be disenfranchised, absent injunctive relief.

10. DECF is directly harmed because Democratic voters are more likely than Republican voters to have their vote denied due to an apparent signature mismatch. Accordingly, it is more likely that Democratic voters will not have their vote counted, thereby, decreasing the overall likelihood that DECF will be successful in its efforts to help elect Democratic candidates to public office. Further, as part of DECF's get-out-the-vote efforts, it engages in a robust VBM voter contact program, informing thousands of voters statewide about their ability to cast VBM ballots; the rules and deadlines surrounding vote by mail; and encouraging voters to utilize vote-by-mail. Florida's policy regarding mismatched signatures decreases overall confidence in the vote-by-mail and provisional ballot processes, and our democracy, generally, and, as a result, directly undermines the efforts that DECF takes to encourage voters to utilize VBM ballots and to assist them in exercising their right to vote.

11. Young and first-time voters, in particular, who are disproportionately more likely than more experienced Florida voters to be required to cast a provisional ballot, and who are also disproportionately more likely to vote by mail, are a core component of DECF's membership and constituency.

5

12.    DECF's members and constituents are directly harmed by Florida's signature-mismatch policy because some of DECF's members and constituents have actually been denied their right to vote in past elections due to the policy. Each election cycle, these voters remain at a high risk of having their right to vote denied as a result of a signature mismatch on their VBM or provisional ballots.

13.    Moreover, given that Democrats are more likely to be disenfranchised due to this policy, and that Democrats have consistently been disenfranchised by these policies in the past, the risk that DECF's members and constituents are being disenfranchised in the 2018 general election is not just highly likely, but it is virtually certain. DECF brings this claim on its own behalf, as well as on behalf of its members and constituents.

14.    Given the extremely narrow vote margins in unofficial election results, it seems likely that the gubernatorial, senate, and attorney general races will result in recounts.[1] Indeed, a recount is *required* by Florida law if the "unofficial returns reflect that a candidate for any office was defeated or eliminated by one-half of a percent or less of the votes cast for such office," unless "the candidate or candidates defeated or eliminated from contention for

---

[1] *Florida's Governor, Senate, AG Races May be Subject to Recount*, CBS 4 MIAMI (Nov. 7, 2018), https://miami.cbslocal.com/2018/11/07/governors-race-may-be-subjected-to-recount/.

such office by one-half of a percent or less of the votes cast for such office request in writing that a recount not be made." Fla. Stat. § 102.141(7).

15.    Plaintiff BILL NELSON FOR U.S. SENATE is a duly organized political campaign in support of Bill Nelson's election to the United States Senate, representing the State of Florida.

16.    Defendant KEN DETZNER is sued in his official capacity as Secretary of State of the State of Florida. Defendant Detzner is a person within the meaning of 42 U.S.C. § 1983 and acts under color of state law. Pursuant to Florida Statute § 97.012, the Secretary of State is the chief elections officer of the State and is therefore responsible for the administration of state laws affecting voting, including with respect to the general election on November 6, 2018.  As Secretary of State, Defendant Detzner's duties consist, among other things, of "[o]btain[ing] and maintain[ing] uniformity in the interpretation and implementation of the election laws." *Id.* at § 97.012(1). The Secretary of State is also tasked with ensuring that county supervisors . . . perform their . . . statutory duties, *see id.* at § 97.012(14), is responsible for providing technical assistance to county supervisors on voter education, election personnel training services, and voting systems, see id. at §§ 97.012(4), -(5), and is responsible for "[p]rovid[ing] written direction and opinions to the supervisors of elections on the performance

of their official duties with respect to the Florida Election Code or rules adopted

by the Department of State." *Id.* at § 97.012(16).

## STATEMENT OF FACTS AND LAW

## VOTE BY MAIL

17.     Voting by mail is very popular among Florida voters. "Both the

overall number of VBM ballots, as well as the percentage of VBM ballots of all

votes cast, have steadily ticked up over the past three presidential elections in the

Sunshine State. In the 2016 general election, more than 2.7 million registered

voters, some 28.7 percent of the 9.6 million Floridians who turned out to vote, cast

their ballot by mail, up from the nearly 2.4 million registrants (or 27.8 percent of

the electorate) who voted VBM in 2012."[2]

18.     In the 2018 general election, 3,497,012 Florida voters requested to

vote by mail.[3] As of November 8, 2018 at 7:17 a.m., 2,622,194 of those voters'

VBM ballots have been returned and accounted for, and 874,818 had not yet been

counted as returned. *Id.* And despite the fact that turnout has historically been

---

[2] Dr. Daniel A. Smith, *Vote-By-Mail Ballots Cast in Florida* at 5, AMERICAN CIVIL LIBERTIES UNION ("ACLU") OF FLORIDA (Rev. Sept. 2018), https://www.aclufl. org/sites/default/files/aclufl_-_vote_by_mail_-_report.pdf.

[3] Florida Division of Elections, *Vote-by-Mail Request and Early Voting Reports*, https://countyballotfiles.elections.myflorida.com/FVRSCountyBallotReports/Abse nteeEarlyVotingReports/PublicStats (last visited Nov. 8, 2018).

lower in midterm elections than in presidential elections, the number of returned VBM ballots in the 2018 midterm election (2,622,194) is already nearly identical to the number of VBM ballots cast in the 2016 presidential election (2,758,617[4]).

19.     However, in 2012 and 2016, approximately 1% of all VBM ballots were rejected as "illegal."[5] "In 2016, more than 27,700 VBM ballots were rejected; in 2012, nearly 24,000 VBM ballots were rejected." *Id.* at 9.

20.     VBM ballots will only be counted if: (1) "[t]he signature on the voter's [VBM] certificate . . . matches the elector's signature in the registration books or precinct register," Fla. Stat. § 101.68(2)(c): (2) upon notification that there is a signature mismatch, the voter submits a "cure affidavit" before "5 p.m. on the day before the election," *and* the affidavit's signature "matches the elector's signature in the registration books or precinct register" *and* the canvassing board is able to "confirm the identity of the elector" with certain forms of accepted identification. Fla. Stat. § 101.68(2)(c), Fla. Stat. § 101.68(4); Fla. Stat. § 101.6923 ("A vote-by-mail ballot will be considered illegal and will not be counted if the signature on the Voter's Certificate does not match the signature on record. The signature on file at the start of the canvass of the vote-by-mail ballots is the

---

[4] Florida Department of State: Division of Elections, *Voting Activity by Ballot Type for the 2016 General Election* (Rev. Mar. 24, 2017), https://dos.myflorida.com/media/697842/2016-ge-summaries-ballots-by-type-activity.pdf.
[5] Smith, *Vote-By-Mail Ballots Cast in Florida* at 9.

signature that will be used to verify your signature on the Voter's Certificate. If you need to update your signature for this election, send your signature update on a voter registration application to your supervisor of elections so that it is received no later than the start of canvassing of vote-by-mail ballots, which occurs no earlier than the 15th day before election day.").

21.     While the deadline to cure a VBM ballot that is rejected is 5:00 p.m. on the day of the election, Fla. Stat. § 101.68(4), VBM ballots are valid if received by as late as 7:00 p.m. on the day of the election. Fla. Stat. § 101.6103(5) ("A ballot shall be counted only if: (a) It is returned in the return mailing envelope; (b) The elector's signature has been verified as provided in this subsection; and (c) It is received by the supervisor of elections *not later than 7 p.m. on the day of the election*.") (emphasis added); *see also* Fla. Stat. § 101.68(7) (imposing the same deadline for UOCAVA absentee ballots). Accordingly, scores of voters are disenfranchised based on the timing of the mail.

22.     Moreover, a recent study found that, "in Florida, younger voters as well as racial and ethnic minorities are disproportionately more likely *not* to have their VBM ballot counted as valid," and that due to "issues with their signature, eligible registrants in Florida who are younger—particularly first-time voters—and who are racial or ethnic minorities are much more likely to have their ballot

10

rejected by a county canvassing board."[6]

23.    And rejection rates for vote-by-mail ballots vary significantly across Florida's counties,[7] underscoring the arbitrary and standardless nature of the statewide process for assessing whether a voter's signature on the vote-by-mail ballot envelope matches the signature on the voter's relevant registration document.

24.    Accordingly, it is virtually certain that, absent this Court's intervention, not all vote-by-mail ballots will be treated equally with regard to the signature matching process.

## PROVISIONAL BALLOTS

25.    In the 2016 presidential election, where the overall turnout rate was similar to the record-breaking turnout in the 2018 midterm election,[8] 24,460 provisional ballots were cast.[9]

---

[6] Smith, *Vote-By-Mail Ballots Cast in Florida* at 9.

[7] Smith, *Vote-By-Mail Ballots Cast in Florida* at 5.

[8] Alejandro De La Garza, *'A High Water Mark for Midterm Turnout.' 2018 Could be a Historic Election for Voter Participation*, Time (Nov. 7, 2018), http://time. com/5447210/2018-voter-turnout/ ("'Certainly in states like Florida and Virginia we're seeing turnout rates that are at least at 20-year highs,' says Corwin Smidt, an associate professor of political science at Michigan State University. 'This is a high water mark for midterm turnout.'").

[9] Florida Department of State: Division of Elections, *Voting Activity by Ballot Type for the 2016 General Election* (Rev. Mar. 24, 2017),   https://dos.myflorida.com/

26.     Among the reasons why a voter would be required to cast a provisional ballot are instances when a voter "claim[s] to be properly registered in the state and eligible to vote at the precinct in the election but [her] eligibility cannot be determined" or when "an election official asserts [the voter] is not eligible." Fla. Stat. § 101.048(1).

27.     "A person casting a provisional ballot shall have the right to present written evidence supporting his or her eligibility to vote to the supervisor of elections by not later than 5 p.m. on the second day following the election." Fla. Stat. § 101.048(1).

28.     As a threshold matter, the county canvassing board will first examine a provisional ballot's voter certificate and affirmation to determine if the voter was entitled to vote in the precinct where the vote was cast. Fla. Stat. § 101.048(2). "If it is determined that the person voting the provisional ballot was not registered or entitled to vote at the precinct where the person cast a vote in the election, the provisional ballot shall not be counted and the ballot shall remain in the envelope containing the Provisional Ballot Voter's Certificate and Affirmation and the envelope shall be marked 'Rejected as Illegal.'" Fla. Stat. § 101.048(2)(b)(2). These voters are not afforded any recourse against disenfranchisement.

---

media/697842/2016-ge-summaries-ballots-by-type-activity.pdf.

29.     And even if a provisional ballot passes the threshold inquiry, the provisional ballot will only be counted if the canvassing board concludes that "the signature on the Provisional Ballot Voter's Certificate and Affirmation" matches "the signature on the voter's registration." Fla. Stat. § 101.048(2)(b)(1). Again, if this standardless signature matching process results in a provisional ballot's rejection, the voter is afforded no recourse against her disenfranchisement.

30.     Signature updates are processed until the start of canvassing of vote-by-mail ballots, which may begin 15 days before an election. *Id.* § 98.077(4); *id.* § 101.68(2)(a). The signature on file at the start of the canvass is the signature that will be used to verify the vote-by-mail ballot. Fla. Stat. § 98.077(4).

31.     Importantly, Florida election law "does not prohibit the supervisor from providing additional methods for updating an elector's signature." *Id.* § 101.68(4)(a).

32.     It would impose little to no administrative burden to count VBM and provisional ballots that have been rejected on the basis of alleged mismatched signatures.

33.     Despite its grave effect of rendering voters' ballots ineffective, Florida's process for rejecting ballots based on signature mismatch is done without any consistent standard or relevant expertise. Some counties use signature verification technology, for example; others do not. The number of VBM and

13

provisional ballots that are rejected as illegal based on a perceived signature mismatch varies considerably and significantly across counties - and even, more troubling, across race and party.

34.   In the 2012 general election, Seminole and Alachua counties were ten times more likely than Sarasota, Hillsborough, and Leon counties to reject a VBM ballot as illegal for signature mismatch. VBM voters in the former counties are less likely to cast an effective vote than those in the latter.

35.   The rejection of a ballot based on a perceived signature mismatch, and the lack of any consistent standard applied across counties, is particularly problematic because of the nature of the signature requirement. Handwriting can change, and quickly, for a variety of reasons. Factors that can affect a person's handwriting include physical factors such as age, illness, injury, medicine, eyesight, alcohol, and drugs; mechanical factors such as pen type, ink, surface, position, paper quality; and psychological factors such as distress, anger, fear, depression, happiness, and nervousness.[10]

---

[10] *See* Richard Orisini,  *Signature Evaluation,* Fla. State Ass'n of Supervisors of Elections 2015 Annual Summer Conference, at 6 (June 7-10, 2016), *available at:* http://www.myfloridaelections.com/portals/fsase/Documents/Conference%20Prese ntations/2015/2011%20Elections%40presentation.pdf; Tomislav Fotak, et al., *Handwritten signature identification using basic concepts of graph theory,* 7 WSEAS Transactions on Signal Processing 145, 145 (2011), http://www.wseas. us/e-library/transactions/signal/2011/53-595.pdf. Moreover, a person's handwriting

36.     Furthermore, because Florida's signature-matching process involves human reviewers, it is necessarily fallible. *See, e.g.,* Rory Conn, Gary Fielding, et al., *Signature Authentication by Forensic Document Examiners,* 46 Journal of Forensic Sci. 884-88 (2001). Canvassers and Supervisors of Elections inevitably make mistakes when rejecting ballots due to mismatched signatures.

## CLAIMS FOR RELIEF

## COUNT I

**First Amendment and Equal Protection**
**U.S. Const. Amend. XIV, 42 U.S.C. § 1983**
*Undue Burden on the Right to Vote*

37.     Plaintiffs incorporate by reference and reallege paragraphs l to 36 of this Complaint.

38.     Under the Equal Protection Clause, a State cannot utilize election practices that unduly burden the right to vote. The practices outlined above impose a severe burden—disenfranchisement--on the right to vote of the voters who cast those ballots. Rejecting these voters' ballots based solely on the alleged signature mismatch on their ballot envelopes does not serve any legitimate, let alone compelling, state interest, particularly where the State has

---

simply changes over time. *See, e.g.,* Michael P. Caligiuri,  et  al., *Kinematics of Signature Writing in Healthy Aging,* 59 Journal of Forensic Sci. 1020  (2014), www.ncbi.nlm.nih.gov/pmc/artic1es/PMC4077921/.

already otherwise verified their eligibility vote.

39.     Furthermore, the standardless process which Florida matches signatures on VBM and provisional ballots, which varies by county, is plainly violative of the Equal Protection Clause. "Having once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another." *Bush v. Gore*, 531 U.S. 98, 104–05 (2000).

40.     Scores of eligible, registered Florida voters will suffer direct and irreparable injury if Defendant refuses to count their ballots. Without relief from this Court, these voters will be deprived of their right to vote in the November election.

41.     Based on the foregoing, Defendant, acting under color of state law, has deprived and will continue to deprive Plaintiffs and the voters they represent of equal protection under the law secured to them by the Fourteenth Amendment to the United States Constitution and protected by 42 U.S.C. § 1983.

## COUNT II

### Equal Protection
### U.S. Const. Amend. XIV, 42 U.S.C. § 1983, 28 U.S.C. § 2201, 28 U.S.C. § 2202

42.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 36, as though fully set forth herein.

16

43.     The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits states from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. This constitutional provision requires "that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburn Living Center*, 473 U.S. 432, 439 (1985); *see also Bush v. Gore*, 531 U.S. 98, 104-05 (2000) (holding Equal Protection Clause applies to "the manner of [the] exercise [of voting]" and "once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another").

44.     Florida's standardless and inconsistent signature matching process with regard to VBM and provisional ballots subjects provisional and VBM voters to differing standards under each county's application of the signature matching process.

45.     Florida's standardless and inconsistent signature matching process with regard to VBM and provisional ballots results in the disparate treatment of similarly situated voters including racial minorities and young voters.

46.     Florida's standardless signature-matching process does not further any legitimate state interest, much less a compelling state interest narrowly tailored, that is sufficiently weighty to justify the disparate treatment of voters who are racial or ethnic minorities and/or young and first-time voters.

17

47.    Injunctive and declaratory relief is needed to protect these disparately impacted voters from total disenfranchisement, and the standardless and inconsistent signature-matching process therefore subjects Plaintiffs, their members, constituencies, and the voters who support them, to serious, concrete, and irreparable injuries due to disparate treatment in violation of the Equal Protection Clause in 2018 general election.

### PRAYER FOR
### DECLARATORY AND INJUNCTIVE RELIEF
### 28 U.S.C. §§ 2201 and 2202, Fed. R. Civ. P. 57 and  65

48.    This case presents an actual controversy because Defendant's present and ongoing refusal to count eligible voters' ballots based on an alleged signature mismatch subjects Plaintiffs and the voters who associate with them to serious and immediate harms, warranting the issuance of a declaratory judgment.

49.    Plaintiffs seek preliminary and/or permanent injunctive relief to protect their statutory and constitutional rights and avoid the injuries described above. A favorable decision enjoining Defendant would redress and prevent the irreparable injuries to Plaintiffs and their members, constituents, and supporters identified herein, for which Plaintiffs have no adequate remedy at law or in equity.

50.    The State will incur no burden in counting the votes of voters who are identified as having a potential signature mismatch as the State has already confirmed they are eligible and registered to vote.

18

51.    The public interest weighs strongly in favor of letting every lawful, eligible voter exercise the right to vote.  The balance of hardships thus tips strongly in favor of Plaintiffs.

52.    Plaintiffs file, concurrent with this Complaint, an emergency motion for a preliminary and/or permanent injunctive relief in accord with Local Rule 7.l(L), as the canvassing of returned VBM and provisional ballots must end no later than noon on November 10. It is essential that the motion be decided before the canvassing period begins for the relief requested to be effective such that signature-mismatch voters are not disenfranchised.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment:

A.    Declaring that all voters who submit a VBM or provisional ballot, and whose ballots are subsequently determined to involve a signature mismatch, be counted as valid votes.

B.    Preliminarily and permanently enjoining enforcement by Defendant of Florida Statute § 101 and any other source of state law that requires election officials to reject VBM and provisional ballots cast by eligible, from rejecting those votes.

C.    Temporarily tolling and restraining the canvassing deadline of noon on November 10 under Florida Statute § 102.141(5) until *after* this matter is heard;

19

D.    Permanently tolling and restraining the canvassing deadline of noon on November 10 under Fla. Stat. § 102.141(5) to provide each county with sufficient time to count VBM and provisional ballots that would otherwise have been rejected on the basis of signature mismatch absent relief;

E.    Awarding Plaintiffs their costs, expenses, and reasonable attorneys' fees pursuant to, *inter alia,* 42 U.S.C. § 1988 and other applicable laws; and

F.    Granting such other and further relief as the Court deems just and proper.

Dated: November 8, 2018

Respectfully submitted,

_____/s/_____
RONALD G. MEYER
Florida Bar No. 0148248
Email:  rmeyer@meyerbrookslaw.com
JENNIFER S. BLOHM
Florida Bar No. 0106290
Email:  jblohm@meyerbrookslaw.com
Meyer, Brooks, Demma and Blohm, P.A.
131 North Gadsden Street
Post Office Box 1547
Tallahassee, FL 32302-1547
(850) 878-5212

Uzoma N. Nkwonta*
Email:  UNkwonta@perkinscoie.com
PERKINS COIE LLP
700 Thirteenth Street, N.W., Suite 600
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-6211

Counsel for Plaintiffs

*Pro Hac Vice Motion forthcoming

21