UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

DEMOCRATIC EXECUTIVE
COMMITTEE OF FLORIDA, and BILL
NELSON FOR U.S. SENATE,

   Plaintiffs,

v.

                                     No. 4:18-cv-00520-RH-MJF

KEN DETZNER, in his official capacity
as Florida Secretary of State,

   Defendant.
_____/

### THE NATIONAL REPUBLICAN SENATORIAL COMMITTEE'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION FOR TEMPORARY INJUNCTION, TEMPORARY RESTRAINING ORDER, AND PRELIMINARY INJUNCTION

The National Republican Senatorial Committee, which has moved to intervene as a defendant in this proceeding (ECF No. 11), respectfully submits this Memorandum in Opposition to Plaintiffs' Emergency Motion for Temporary Injunction, Temporary Restraining Order, and Preliminary Injunction (ECF No. 3).

### INTRODUCTION

Plaintiffs' request for a temporary restraining order is an eleventh-hour attempt to change the outcome of the 2018 election for United States Senate.

Because Senator Nelson trails Governor Rick Scott by approximately 15,000 votes, Senator Nelson needs to find a source of additional votes—fast. This lawsuit is his device for doing so.

Plaintiffs' lawsuit challenges well-settled Florida procedures for counting Vote by Mail (VBM) ballots and provisional ballots. Election officials simply confirm that the signature on the ballot matches the voter's signature in the registration books or precinct register. Fla. Stat. § 101.68(2)(c). In the case of VBM ballots, if there is a signature mismatch, the voter is notified and may submit a "cure affidavit" with a matching signature before 5 p.m. on the day of the election. *Id.*

Plaintiffs strive to portray a standard signature-match requirement as an unconstitutional infringement on the right to vote. It plainly is no such thing. It is a rational, facially neutral, and widely accepted way of protecting the integrity of elections by ensuring that the person who casts the vote is in fact the person whose vote is recorded.

The federal courts in Florida are familiar with the exact challenge Plaintiffs are asserting. In 2016, this Court addressed concerns about situations where Florida's signature-match requirement incorrectly led to exclusion of a VBM ballot with the adoption of a "cure period," in which the voter may cure the mismatch up until 5 p.m. the day before the election. *See Fla. Democratic Party v. Detzner*, No.

4:16CV607-MW/CAS, 2016 WL 6090943, at *1 (N.D. Fla. Oct. 16, 2016). Plaintiffs do not raise the cure issue in their grievances. Instead, they have launched a broadside on the entire statute itself, seeking to relitigate the constitutionality of the signature-match requirement and effectively asking this Court to overrule the prior decision by holding that the cure period is ***not*** sufficient to address their constitutional concern.

This Court should decline Plaintiffs' invitation to throw the election process into what would almost certainly be months of political chaos by suspending the reporting deadline statewide, especially when they have long known about the signature-match requirement.

## ARGUMENT

1. In 2016, the same plaintiff that brought this suit argued in this Court that "Florida's statutory scheme, which provides an opportunity to cure no-signature ballots yet denies that same opportunity for mismatched-signature ballots," violated their right to vote. *Fla. Democratic Party*, 2016 WL 6090943. This Court noted that "prior to 2004, . . . voters had the ability to cure both mismatched-signature ballots and no-signature ballots" and that according to testimony, that "method was highly effective." *Id*. at *8. The Plaintiffs in that case received the very relief that they now implicitly reject. The Court ordered:

> Defendant Detzner is ordered to issue a directive to the supervisors of elections . . . to allow mismatched-signature ballots to be cured in precisely the same fashion as currently provided for non-signature ballots. For example, the supervisors of elections must provide the same notice, see § 101.68(4)(a), Fla. Stat. (2016) ("The supervisor of elections shall, on behalf of the county canvassing board, notify each elector whose ballot was rejected as illegal and provide the specific reason the ballot was rejected ...."), the same process, *see id*. § 101.68(4)(d)(5)(e) (outlining the required process), and must allow mismatched-signature ballots to be cured up to the same date and time as currently done for no-signature ballots, *id*. § 101.68(4)(b) (allowing to cure until 5:00 p.m. the day before the election).

*Id*. at *9. There is no allegation that Defendant Detzner has not complied with this Court order. Indeed, as Plaintiffs recognize, VBM voters have the opportunity to cure under state law: if there is a signature mismatch, the voter will be notified and may submit a "cure affidavit" before "5 p.m. on the day before the election" with a cured signature that "matches the elector's signature in the registration books or precinct register" so that the canvassing board is able to "confirm the identity of the elector." Motion at 4 (quoting Fla. Stat. § 101.68(2)(c), Fla. Stat. § 101.68(4)). Rather than invoke the cure this Court found was constitutionally permissible and in fact "highly effective," Plaintiffs attack the constitutionality of the signature-match requirement itself, arguing that "voters will be disenfranchised because their ballots are rejected due to a determination that the signature on their ballot envelope does not 'match' the signature on file." Motion at 20.

4

Moreover, the equitable doctrine of laches prevents relief here. The equitable doctrine of laches will bar a claim when three elements are present: "(1) a delay in asserting a right or a claim; (2) that the delay was not excusable; and (3) that there was undue prejudice to the party against whom the claim is asserted." *Venus Lines Agency, Inc. v. CVG Int'l Am., Inc.*, 234 F.3d 1225, 1230 (11th Cir. 2000) (quoting *Kason Indus., Inc. v. Component Hardware Grp., Inc.,* 120 F.3d 1199, 1203 (11th Cir.1997)). The doctrine of laches has been applied to preclude late-filed challenges to election laws. *See*, *e.g.*, *Perry v. Judd*, 471 F. App'x 219, 224-25 (4th Cir. 2012). Here, Plaintiffs have provided no legitimate justification for their delay, and Intervenor-Defendants will be substantially prejudiced if the claim is allowed to move forward.

2. Florida's signature-match requirements do not impose an undue burden on the right to vote. "It is beyond cavil that 'voting is of the most fundamental significance under our constitutional structure,'" *Burdick v. Takushi*, 504 U.S. 428, 433 (1992) (quoting *Illinois Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184 (1979)). "It does not follow, however, that the right to vote in any manner and the right to associate for political purposes through the ballot are absolute." *Id*. The Supreme Court has instructed that "when a state election law provision imposes only 'reasonable, nondiscriminatory restrictions' upon the First and Fourteenth Amendment rights of voters, 'the State's important regulatory

5

interests are generally sufficient to justify' the restrictions." *Id*. (quoting *Anderson v. Celebrezze*, 460 U.S., 780, 788 (1983)). Applying this test in *Burdick*, the Supreme Court concluded that Hawaii's prohibition on write-in voting did not unreasonably infringe upon its citizens' rights under the First and Fourteenth Amendments. *Id*. at 442.

Florida's signature-match requirement represents precisely the sort of "reasonable, politically neutral regulations" that the Supreme Court has "repeatedly upheld." *Burdick*, 504 U.S. at 438. As this Court has recognized, certain state election regulations "must be substantial to ensure that order rather than chaos accompanies our democratic process." *Fla. Democratic Party*, 2016 WL 6090943, at *6 (citing *Burdick*, 504 U.S. at 433).

Indeed, the signature match requirement is the quintessential neutral and reasonable election requirement: it "is nondiscriminatory since all candidates have the same opportunities and face the same restrictions." *Orange v. D.C. Bd. of Elections & Ethics*, 629 A.2d 575, 580 (D.C. 1993). It "also is rational" because the requirement is "designed to prevent election fraud by giving a candidate's challengers and the Board a simple, relatively inexpensive, yet reasonably accurate way of determining whether signatures belong to registered voters." *Id*. at 581. "Other methods, such as computer-assisted comparisons, could well lead to judgment calls and disputes as to authenticity which the Board understandably

6

seeks to avoid." *Id.* Thus, "to require election officials to do more than compare names against registration lists and other Board records would be to saddle them with tasks and costs that the Constitution does not require them to bear." *Id.*

In the analogous context of referendum petitions, courts have held that the "requirement to have a match, or something reasonably resembling a match, between the signature on the petition and the signer's name as it appears on the voter registration list" is "reasonably related to the State's undoubtedly important interest in "in protecting the integrity and reliability" of the process. *Howard Cty. Citizens for Open Gov't v. Howard Cty. Bd. of Elections*, 30 A.3d 245, 260 (Md. App. 2011); *see also Doe v. Montgomery Cty. Bd. of Elections*, 962 A.2d 342, 363 (Md. 2008) (holding that "signature requirements provide additional means by which fraudulent or otherwise improper signatures upon a referendum petition may be detected.").

There is nothing new with the signature match requirement. In fact, Florida's VBM requirements have been significantly relaxed over the years. Until 1996, an absentee ballot was required to be notarized or to contain the signatures of two witnesses who were registered to vote in Florida. Ch. 96-57, § 4, Laws of Fla. The voter was also required to attest that one of the statutorily recognized justifications for casting an absentee ballot was satisfied. *Id.* In 1996, the Legislature amended section 101.64, Florida Statutes, to require only one witness

7

signature. *Id.* Since 2001, voters have been permitted to cast absentee ballots for any reason or no reason at all, Ch. 2001-40, § 53, Laws of Fla., and in 2004 the legislature repealed the witness-signature requirement, Ch. 2004-232, § 1, Laws of Fla. With the requirement of a notarization or witness signatures removed, the requirement that the voter's signature match the signature on file is the only remaining check to assure the identity of the person who actually cast the ballot.

3. Finally, Plaintiffs have not made the required showing of irreparable harm. Unlike the lawsuit Plaintiffs filed in the last election, they can no longer allege—and have not alleged— that vote-by-mail voters lack "opportunity to prove they are who they say they are." *Detzner*, 2016 WL 6090943, at *8.

There is no reason this lawsuit could not have been filed months in advance. If Plaintiffs believed that Florida's failure to adopt the signature-matching protocol they desire was a constitutional violation, they had every opportunity to bring their claims long ago, rather than wait until approximately 24 hours before the deadline and then demand an emergency TRO.

## CONCLUSION

Intervenor-Defendant respectfully requests that the Court deny Plaintiffs' Emergency Motion for a Temporary Restraining Order.

## LOCAL RULE 7.1(F) CERTIFICATION

The undersigned certifies that the attached memorandum of law contains 1,711 words.

Respectfully submitted,

/s/ *Andy Bardos*

| | |
|---|---|
| Thomas H. Dupree Jr. * | Andy Bardos (FBN 822671) |
| Helgi C. Walker * | George T. Levesque (FBN 555541) |
| Gibson, Dunn & Crutcher LLP | GRAYROBINSON, P.A. |
| 1050 Connecticut Avenue, N.W. | Post Office Box 11189 |
| Washington, D.C. 20036 | Tallahassee, Florida 32302-3189 |
| Telephone: 202-955-8500 | Telephone: 850-577-9090 |
| tdupree@gibsondunn.com | andy.bardos@gray-robinson.com |
| hwalker@gibsondunn.com | george.levesque@gray-robinson.com |

* *pro hac vice applications forthcoming*

*Attorneys for the National Republican Senatorial Committee*