UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA

DEMOCRATIC EXECUTIVE
COMMITTEE OF FLORIDA,
and BILL NELSON FOR U.S.
SENATE,

    Plaintiffs,

  v.

KEN DETZNER, in his official
capacity as Secretary of State of
the State of Florida,

    Defendant.

Case No. 4:18-cv-00520-RH-MJF

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR
EMERGENCY MOTION FOR TEMPORARY
INJUNCTION, TEMPORARY RESTRAINING
ORDER, AND PRELIMINARY INJUNCTION**

  Plaintiffs' opening brief and the evidence upon which it relies establishes that Florida's rejection of vote-by-mail ("VBM") ballots is based on error-prone signature-matching determinations, the standards of which vary widely across Florida's 67 counties. The fate of a VBM or provisional ballot will depend in large part on the county in which the voter resides, or even the specific official who reviews their signature, and the arbitrary rejection of such ballots severely burdens the rights to vote of thousands of Florida voters. Without the intervention of this

Court, these voters, along with Plaintiffs, will suffer irreparable injury. The oppositions filed by the Secretary of State and Intervenors fail to demonstrate how such an arbitrary system is constitutional, and misapply the doctrine of laches and *res judicata* to urge this Court to ignore outright disenfranchisement that has occurred in this election. None of the authorities Defendant or Intervenors cite prevent this Court from granting relief to prevent the currently ongoing disenfranchisement of Florida voters. The Court should therefore grant Plaintiffs' emergency motion for temporary restraining order and preliminary injunction.

**I.     The Lack of an Adequate, Uniform Procedure for Determining the Validity of Signatures on VBM Ballots Violates the Equal Protection Clause.**

Both the Secretary and Intervenors have failed to provide any legitimate justification for the non-uniform and arbitrary signature-matching process throughout Florida's 67 counties. This court already found prior to the 2016 election that Florida's lack of statewide procedures for signature-matching led to troubling differences in the number of ballots rejected across the state:

> [T]he procedures in place vary widely by county. . . As a result of these varied procedures, the number of mismatched-signature ballots that are rejected also varies widely by county. . . In the 2012 General Election, for example, Pinellas County rejected approximately .25% of all vote-by-mail ballots cast, while Broward County rejected close to 1.5%.

2

*Fla. Democratic Party v. Detzner* ("*FDP*"), No. 4:16CV607-MW/CAS, 2016 WL 6090943, at *2 (N.D. Fla. Oct. 16, 2016). Simply stated, the state cannot administer VBM and provisional ballots on different terms to different voters. *See*, *e.g.*, *Bush v. Gore*, 531 U.S. 98, 104–05 (2000) ("Having once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another.").[1] Relying on similar principles of constitutional fairness, other courts have found standardless signature-match procedures to be constitutionally infirm. *See, e.g.*, *Martin v. Kemp*, No. 1:18-cv-4776, 2018 WL 5276242, at *9 (N.D. Ga. Oct. 24, 2018) ("[G]iven that a single election official—who is not trained in handwriting analysis—has unchecked discretion to determine whether two signatures match. . . [t]here is simply no guarantee that such voters' signatures might match on a second absentee ballot or absentee ballot application."); *Saucedo v. Gardner*, No. 17-CV-183-LM, 2018 WL 3862704, at *15 (D.N.H. Aug. 14, 2018) ("Such discretion becomes constitutionally intolerable once other factors are taken into account: the natural variations in voters' signatures combined with the absence of training and functional standards on handwriting analysis, and the lack

---

[1] The Secretary's attempt to undermine *Bush*'s precedential value, *see* Sec. Mot. at 8-9, is misguided. The ruling in *Bush* merely reaffirmed a principle that has been a hallmark of the Supreme Court's equal protection analysis for many years. *See Harper v. Virginia Bd. of Elections*, 383 U.S. 663, 665 (1966) ("[O]nce the franchise is granted to the electorate, lines may not be drawn which are inconsistent with the Equal Protection Clause of the Fourteenth Amendment."). The Secretary's criticism of Plaintiffs' reliance on *Bush* is unavailing.

3

of any review process or compliance measures."); *League of United Latin Am. Citizens of Iowa v. Pate*, No. 18-1276, 2018 WL 3946147, at *1 (Iowa Aug. 10, 2018) (affirming injunction prohibiting use of signature-matching provisions for absentee ballots); *La Follette v Padilla*, No. CPF-17-515931, 2018 WL 3953766, at *1 (San Francisco Cty., Cal. Super. Ct. Mar. 05, 2018) (granting writ of mandate finding absentee signature-matching provision unconstitutional); *Zessar v. Helander*, No. 05 C 1917, 2006 WL 642646, at *7 (N.D. Ill. Mar. 13, 2006), *vacated as moot sub nom Zessar v. Keith*, 536 F.3d 788, 793–95 (7th Cir. 2008); *Raetzel v. Parks/Bellemont Absentee Election Bd.*, 762 F. Supp. 1354 (D. Ariz. 1990).

Indeed, *Lemons v. Bradbury*, 538 F.3d 1038 (9th Cir. 2008), on which the Secretary relies, further illustrates the constitutional inadequacy of Florida's processes. In *Lemons*, the Court noted that the signature-match process at issue was constitutional in part because the "Secretary sponsors signature verification training sessions, and county elections officials regularly attend these sessions and use the materials provided. During the verification [process], all counties subjected initially rejected signatures to a second level of review." *Id*. at 1106. Florida has no training to speak of regarding verification, no second level review, and no uniform process that canvassing boards or other election officials follow in rejecting ballots due to purported signature mismatches.

4

The Secretary currently still provides lay election officials with no training or even cursory guidance on how to conduct signature-match analysis, and the result is that voters have been disenfranchised.

## II. Florida's Signature-Matching Requirement Unconstitutionally Burdens the Right to Vote.

The Secretary's and Intervenor's arguments that a signature-matching requirement imposes a minimal or no burden on the right to vote simply ignores the disenfranchisement that has already occurred. There can be little dispute that rejecting an eligible voter's ballot based on the demonstrably error-prone analysis of signatures, conducted by lay persons untrained in signature matching, imposes a heavy burden on the right to vote. As this Court noted, "[i]f disenfranchising thousands of eligible voters does not amount to a severe burden on the right to vote, then this Court is at a loss as to what does." *FDP*, 2016 WL 6090943, at *6.

The burden that results from these laws is complete disenfranchisement, mandating strict scrutiny, and the Secretary cannot point to any sufficient state interest justifying this drastic result. The Secretary and Intervenors seeks to justify these regulations through often-cited but unsubstantiated claims of voter fraud, which, as was the case in the 2016 lawsuit, they have yet to support with any evidence. *See Fla. Democratic Party v. Detzner*, No. 4:16cv607, 2016 WL 6090943, at *7 (N.D. Fla. Oct. 16, 2016) (noting the absence of any evidence that mismatched signatures were signed fraudulently); *see also* Sarah Blaskey and David Smiley,

5

*State Elections Observers Have Seen No Evidence of Criminal Activity in Broward County*, Miami Herald, Nov. 10, 2018, available at https://www.miamiherald.com/news/local/community/broward/article221469215.html. The evidence instead points to properly registered voters, such as former Congressman Patrick Murphy, having their ballots incorrectly denied based on erroneous determinations. *See* Steve Contorno, *Former Florida Congressman: My Vote Wasn't Counted Because of Signature Law*, Tampa Bay Times, Nov. 10, 2018, *available at* https://www.tampabay.com/florida-politics/buzz/2018/11/09/former-florida-congressman-my-vote-wasnt-counted-because-of-signature-law/. Former Congressman Murphy had voted in Florida for 15 years with the same signature. *See id*. However, this year his ballot was rejected due to a purported "[i]nvalid signature," *id*., a fact which former Congressman Murphy only discovered after the cure deadline by proactively checking the Palm Beach County elections website. And this was by no means an isolated incident. Such a far-sweeping, inadequately implemented regulation is unreasonable and cannot survive minimal, let alone strict, scrutiny. *See Norman v. Reed*, 502 U.S. 279, 280 (1992). Plaintiffs have demonstrated that Florida's signature matching requirement for VBM and provisional ballots is constitutionally infirm, and their request for preliminary injunction should be granted.

## III. Plaintiffs Will Suffer Irreparable Harm Absent This Court's Intervention.

The Secretary's argument that Plaintiffs will not suffer irreparable harm is unavailing. This Court has recognized that deprivation of the right to vote—including the rights of Plaintiffs' members, constituents, and supporters—constitutes irreparable injury. *See FDP*, 2016 WL 6090943, at *8 ("[I]rreparable injury is presumed when '[a] restriction on the fundamental right to vote' is at issue.") (quoting *Obama For America v. Husted*, 697 F.3d 423, 428 (6th Cir. 2012)); *see also League of Women Voters of N.C. v. N.C.*, 769 F.3d 224, 247 (4th Cir. 2014) ("Courts routinely deem restrictions on fundamental voting rights irreparable injury.") (citations omitted). The Secretary's contention that Plaintiffs waited too long to seek relief is meritless. Plaintiffs filed this lawsuit in response to recent and currently-ongoing disenfranchisement, and the Secretary and Intervenors have pointed to no authority that requires this Court to ignore the rejection of eligible ballots simply because the challenged law had been in place previously. The immediate prospect of disenfranchisement for thousands of Floridians clearly constitutes irreparable harm.

## IV.     *Res Judicata* Does Not Bar Plaintiffs' Requested Relief.

*Res judicata* does not bar the Court's consideration of Plaintiffs' claims here. For *res judicata* to apply, a defendant must establish four elements: (1) the prior decision must have been rendered by a court of competent jurisdiction; (2) there

7

must have been a final judgment on the merits; (3) both cases must involve the same parties or their privies; and (4) both cases must involve the same causes of action. *Lobo v. Celebrity Cruises, Inc.*, 704 F.3d 882, 892 (11th Cir. 2013). To determine if the prior and present causes of action are "the same" for purposes of res judicata, the Court's analysis centers on whether the actions arise "out of the same nucleus of operative fact or are based on the same factual predicate." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183 (11th Cir. 2003).

The Court's ruling in *FDP* ensured that VBM voters would be given an opportunity to cure signature mismatches, but events that have transpired recently have shown that the opportunity to cure is insufficient to prevent the unlawful disenfranchisement of Florida voters. For instance, VBM voters may cure signature mismatches by 5 p.m. on the day before Election Day. Fla. Stat. § 101.68(4)(b). But the cure process provides no remedy to those who submit their VBM ballots on Election Day, or for voters, like former Congressman Murphy, who do not receive notice of their rejected ballot until well after the cure period. Furthermore, this lawsuit challenges the rejection of provisional ballots based on signature mismatches, which is entirely separate from the VBM ballot curing process. This case involves different facts and different claims that this Court did not address in *FDP*. Thus, principles of *res judicata* have no applicability here.

## V. The Doctrine of Laches or the "*Purcell* Principle" is Plainly Inapplicable To this Case.

Neither Defendants nor Intervenors can point to any prejudice or voter confusion likely to result from an order enjoining the rejection of ballots for signature mismatch, so neither laches, the "*Purcell* principle," nor any other principle of equity prohibits this Court's intervention. Putting aside the fact that there has been no delay in challenging the ongoing disenfranchisement of Florida voters, "laches depends on more than inexcusable delay in asserting a claim; it depends on inexcusable delay causing undue prejudice to the party against whom the claim is asserted." *See Law v. Royal Palm Beach Colony, Inc.*, 578 F.2d 98, 101 (5th Cir. 1978) (emphasis added); *see also id.* (to establish prejudice, a party "must show a delay which has subjected him to a disadvantage in asserting and establishing his claimed right or defense, or other damage caused by his detrimental reliance on his adversary's conduct"); *In re Legel Braswell Gov't Sec. Corp.*, 695 F.2d 506, 515 (11th Cir. 1983) (holding that prejudice sufficient to justify laches must be "substantial").

Here, the Secretary's claims of prejudice are both unavailing and inconceivable. Plaintiffs' requested relief simply demands that absentee ballots removed for mismatched signatures based on an unconstitutional process be counted. Efforts to count and recount the votes in this election are currently proceeding, and Plaintiffs merely seek that these votes, previously unconstitutionally

9

denied, be appropriately recorded. Indeed, since this lawsuit was filed, county boards have been making similar determinations, despite the Secretary's seeming contention that adding such votes to the count imposes an insurmountable administrative difficulty. It simply cannot be the case that a ruling for Plaintiffs in this matter will increase the administrative burden on the state or on county officials in any meaningful sense.

The "*Purcell* principle" similarly relies on a showing of voter confusion entirely absent here. *Purcell* instructs courts to carefully consider court orders issued shortly before elections because "[c]ourt orders affecting elections, especially conflicting orders, can themselves result in voter confusion and consequent incentive to remain away from the polls." *Purcell v. Gonzalez*, 549 U. S. 1, 4–5 (2006) (per curiam). There is no such concern here. If anything, the current system, rather than the relief Plaintiffs seek, breeds voter confusion and uncertainty. Voters can vote using the same signature for decades (in Congressman Murphy's case, 15 years), and then have their ballots denied simply due to one election officials' subjective and untrained signature analysis. It cannot be the case that removing this arbitrary and deeply flawed system could result in *more* voter confusion, so *Purcell* is plainly inapplicable here.

## Conclusion

ACCORDINGLY, for the foregoing reasons, Plaintiffs respectfully request that this Court grant their requested injunction.

Dated: November 12, 2018

Respectfully submitted,

/s/ *Marc E. Elias*           .
Marc E. Elias*
Uzoma N. Nkwonta*
**PERKINS COIE LLP**
700 Thirteenth Street, N.W., Suite 600
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-6211

Ron Meyer
**Meyer, Brooks, Demma & Blohm, P.A.**
131 North Gadsen Street
Tallahassee, Florida 32301
Telephone: (850) 878-5212

*Counsel for Plaintiffs*
*Seeking *Pro Hac Vice* Admission

11

## CERTIFICATE OF SERVICE

I hereby certify that on November 12, 2018, I electronically filed the foregoing on behalf of the Plaintiffs with the Clerk of the Court using the ECF system, which will send notification of such filing to all attorneys of record.

Respectfully submitted,

/s/ *Marc E. Elias*

Marc E. Elias

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(F), I HEREBY CERTIFY that the enclosed Memorandum of Law of Plaintiffs contains approximately 2,181 words, which is fewer than the total words permitted by the rules of court. Counsel relies on the word count of the computer program used to prepare this memorandum.

Dated: November 12, 2018

       /s/ *Marc Elias*
Marc E. Elias
Email: MElias@perkinscoie.com
PERKINS COIE LLP
700 Thirteenth Street, N.W., Suite 600
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-6211