# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

DEMOCRATIC EXECUTIVE
COMMITTEE OF FLORIDA, and BILL
NELSON FOR U.S. SENATE,

     Plaintiffs,

                                      No. 4:18-cv-00520-RH-MJF

v.

KEN DETZNER, in his official capacity
as Florida Secretary of State,

     Defendant.

_____/

## THE NATIONAL REPUBLICAN SENATORIAL COMMITTEE'S RESPONSE TO EMERGENCY MOTION REQUESTING ORDER FOR SECRETARY TO ISSUE LIST OF BALLOTS ELIMINATED FOR SIGNATURE MISMATCH

Defendant-Intervenor, the National Republican Senatorial Committee, responds in opposition to Plaintiffs Emergency Motion Requesting Order for Secretary to Issue List of Ballots Eliminated for Signature Mismatch (ECF No. 52).

Plaintiffs' demand that the Secretary of State produce lists of names of voters who submitted their ballots by mail, but whose signatures did not match, is unnecessary, impractical, and highly disruptive to the ongoing recount process, and should be rejected.

The information that Plaintiffs seek is not at hand and readily available to the Secretary of State. To obtain the information, Secretary would be required to seek and compile the information from sixty-seven different sources: Florida's sixty-seven Supervisors of Elections. The Supervisors, in turn, are presently absorbed in conducting a machine recount required by state law, the results of which must be reported to the Secretary by 3 p.m. today. § 102.141(7), Fla. Stat. Within hours after the results of the machine recount are reported, the Secretary will likely order a manual recount of all overvotes and undervotes in two statewide elections, as Florida law requires. The Supervisors must then complete the manual recount by the certification deadline at noon on Sunday. *Id*. § 102.112(2).

In fact, even with several days' notice before yesterday's hearing, the State's Director of Elections asked the sixty-seven Supervisors for a number in response to the Court's order. Only forty-five of sixty-seven counties responded even with a number. Now Plaintiffs come seeking a list of names. Would it be fair if voters in only forty-five (or fewer) counties were offered the notice that Plaintiffs contemplate because their counties were able to make lists public, while voters in the other counties might not have the same opportunities?

The recounts have already strained the resources of election officials to their limits. All resources—including time and personnel—are presently dedicated to the fulfillment of their statutory obligations, including a 3 p.m. deadline today, and

must not be turned aside from their recount responsibilities to compile the lists that Plaintiffs now demand. To divert election officials and their personnel from their imperative duties under current time pressures, and to require them to immediately sort and compile data to be transmitted to the Secretary would—if possible at all—disrupt and jeopardize the already fragile and time-sensitive tasks that now occupy Supervisors of Elections across the State.

Plaintiffs make their demand without any consideration of the practical feasibility of compliance or the diversity of resources available to the sixty-seven differently situated Supervisors of Elections—or whether compliance with Plaintiffs' demands for a fire drill to collect, report, and aggregate data would jeopardize the ability of the Supervisors and the Secretary to conduct and complete their pressing statutory responsibilities in a timely, orderly, and accurate way. To foist new, urgent, and unforeseen tasks on the Supervisors at the present moment would introduce an unacceptable risk of disruption and error into the ongoing recounts.

Finally, Plaintiffs' demand assumes that this Court, in entering injunctive relief, simply overlooked the means necessary to make the injunction effective. It did not. Further relief is not necessary to assure the efficacy of the Court's preliminary injunction, which has already been widely reported in all news media. Any voters who submitted ballots by mail, and who might have been belatedly

notified of a signature mismatch, now know of the extended cure period ordered by the Court, without production of the lists that Plaintiffs seek. If the production of lists were necessary to the efficacy of the Court's order, the Court would have required the production of lists in its preliminary-injunction order.

Finally, even if a production of lists were ordered, the Supervisors and the Secretary must be afforded sufficient time to produce *accurate* information. No further relief should be ordered until the Secretary first notifies this Court by 5 p.m. today whether he intends to comply with the Court's order, *see* ECF No. 46 at 34, and frames the directives to implement the Court's preliminary injunction.

## LOCAL RULE 7.1(F) CERTIFICATION

The undersigned certifies that this motion contains 681 words.

Respectfully submitted,

/s/ Andy Bardos

| | |
|---|---|
| Thomas H. Dupree Jr. * | Andy Bardos (FBN 822671) |
| Helgi C. Walker * | George T. Levesque (FBN 555541) |
| Gibson, Dunn & Crutcher LLP | GRAYROBINSON, P.A. |
| 1050 Connecticut Avenue, N.W. | Post Office Box 11189 |
| Washington, D.C. 20036 | Tallahassee, Florida 32302-3189 |
| Telephone: 202-955-8500 | Telephone: 850-577-9090 |
| tdupree@gibsondunn.com | andy.bardos@gray-robinson.com |
| hwalker@gibsondunn.com | george.levesque@gray-robinson.com |
| * *pro hac vice admission provisionally* | |
| *granted* | |

*Attorneys for the National Republican Senatorial Committee*