# Exhibit 1

No. 18-14758

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

_____

DEMOCRATIC EXECUTIVE COMMITTEE OF FLORIDA
and BILL NELSON FOR U.S. SENATE,

*Plaintiffs-Appellees*,

v.

NATIONAL REPUBLICAN SENATORIAL COMMITTEE,

*Intervenor-Defendant-Appellant*.

_____

On Appeal From The United States District Court
For The Northern District of Florida, Tallahassee Division
No. 4:18-cv-00520-RH-MJF

_____

## APPELLANT'S EMERGENCY MOTION FOR A STAY AND
## MOTION TO EXPEDITE

_____

Jason Torchinsky
Holtzman Vogel Josefiak Torchinsky PLLC
45 North Hill Drive, Suite 100
Warrenton, VA 20106
Telephone: (540) 341-8808
JTorchinsky@hvjt.law

Thomas H. Dupree Jr.
*Counsel of Record*
Matthew D. McGill
Helgi C. Walker
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 887-8500
tdupree@gibsondunn.com
mmcgill@gibsondunn.com
hwalker@gibsondunn.com

*Attorneys for Intervenor-Defendant-Appellant*
*The National Republican Senatorial Committee*

Andy Bardos (FBN 822671)
George T. Levesque (FBN 555541)
GRAYROBINSON, P.A.
Post Office Box 11189
Tallahassee, Florida 32302-3189
Telephone: 850-577-9090
andy.bardos@gray-robinson.com
george.levesque@gray-robinson.com

## CORPORATE DISCLOSURE STATEMENT AND
## CERTIFICATE OF INTERESTED PERSONS

Pursuant to Federal Rule of Appellate Procedure 26.1, Appellant the National Republican Senatorial Committee certifies that it is not publicly traded and has no parent corporation and that no publicly held corporation owns more than 10% of its stock.

The following persons and entities have an interest in the outcome of this appeal:

1. Andreassen, Ezekiel, Declarant

2. Bardos, Andy, Esq., Counsel for Intervenor-Defendant-Appellant

3. Bill Nelson for U.S. Senate, Plaintiff-Appellee

4. Blohm, Jennifer S., Esq., Counsel for Plaintiffs-Appellees

5. Bondi, Pamela J., Esq., Attorney General of the State of Florida, Intervenor-Defendant

6. Daniel, Stephanie Allison, Esq., Counsel for Intervenor-Defendant Attorney General of the State of Florida

7. Davis, Ashley E., Esq., Counsel for Defendant

8. Democratic Executive Committee of Florida, Appellee

9. Detzner, Kenneth, Florida Secretary of State, Defendant

10. Dupree, Thomas H. Jr., Esq., Counsel for Intervenor-Defendant-Appellant National Republican Senatorial Committee

11. Early, Mark, Leon County Supervisor of Elections

12. Elias, Marc E., Esq., Counsel for Plaintiffs-Appellees

13.    Ferro, Daniela, Declarant

14.    Gibson, Dunn & Crutcher LLP, Counsel for Intervenor-Defendant-Appellant National Republican Senatorial Committee

15.    GrayRobinson, P.A., Counsel for Intervenor-Defendant-Appellant National Republican Senatorial Committee

16.    Hinkle, The Honorable Robert L., United States District Judge for the Northern District of Florida

17.    Holtzman Vogel Josefiak Torchinsky, PLLC, Counsel for Intervenor-Defendant-Appellant National Republican Senatorial Committee

18.    Hopping Green & Sams, P.A., Counsel for Defendant

19.    Jazil, Mohammad O., Esq., Counsel for Defendant

20.    Levesque, George T., Esq., Counsel for Intervenor-Defendant-Appellant National Republican Senatorial Committee

21.    McGill, Matthew D., Counsel for Intervenor-Defendant-Appellant National Republican Senatorial Committee

22.    McVay, Bradley R., Esq., Counsel for Defendant

23.    Means, Malcolm N., Counsel for Defendant

24.    Meyer, Brooks, Demma and Blohm, P.A., Counsel for Plaintiffs-Appellees

25.    Meyer, Ronald G., Esq., Counsel for Plaintiffs-Appellees

26.    Mohammed, Linton A., PH.D.

27.    Murphy, The Honorable Patrick, Declarant

28.    National Republican Senatorial Committee, Intervenor-Defendant-Appellant

29.    Nelson, Bill, United States Senator

30.    Nkwonta, Uzoma N., Counsel for Plaintiffs-Appellees

31.    Perkins Coie LLP, Counsel for Plaintiffs-Appellees

32.    Perko, Gary V., Esq., Counsel for Defendant

33.    Pratt, Jordan E., Esq., Counsel for Intervenor-Defendant Attorney General of the State of Florida

34.    Scott, Rick, Governor of Florida

35.    Torchinsky, Jason, Esq., Counsel for Intervenor-Defendant-Appellant National Republican Senatorial Committee

36.    Walker, Helgi C., Esq., Counsel for Intervenor-Defendant-Appellant National Republican Senatorial Committee

37.    Walker, The Honorable Mark E., Chief United States District Judge for the Northern District of Florida

38.    Wenger, Edward M., Esq., Counsel for Intervenor-Defendant Attorney General of the State of Florida

39.    Williams, Fallon, Declarant

40.    Winship, Blaine H., Counsel for Intervenor-Defendant Attorney General of the State of Florida


 /s/  Thomas H. Dupree Jr.
Thomas H. Dupree Jr.

## STATEMENT REGARDING EXPEDITED APPEAL

Appellant National Republican Senatorial Committee respectfully requests expedited appeal and oral argument on the merits, regardless of whether its motion for a stay is granted.  This case involves issues of exceptional importance, including the appropriateness of entering a preliminary injunction ordering state election officials to effectively restart the 2018 election after Election Day and whether the Constitution requires a burdensome and chaotic extension of the cure period for signature mismatches on vote-by-mail and provisional ballots.  The district court's decision misapplied Supreme Court and Eleventh Circuit precedent and threatens to disrupt the orderly electoral process in the Nation's third most populous state.

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT ................................................. i

TABLE OF CITATIONS ........................................................................ iii

INTRODUCTION ................................................................................. 1

STATEMENT OF THE CASE ................................................................. 5

ARGUMENT ..................................................................................... 10

    I.    NRSC Is Likely To Succeed On Appeal. ........................................... 11

    A.    Appellees' Legal Challenge Fails On The Merits. ............................. 11

    B.    The Untimeliness Of Appellees' Lawsuit Dooms The
            Preliminary Injunction On Appeal. ....................................... 14

    C.    The District Court's Order Is Unclear And Potentially Creates
            A New Constitutional Violation. ........................................... 17

    II.    A Stay Is Necessary To Prevent An Irreparably Damaging
           Restart Of The Election. ..................................................... 19

    III.    The Public Interest In The Integrity Of Elections Far Outweighs
           Any Hypothetical Injury To Other Parties That Would Result
           From A Stay. ................................................................... 21

CONCLUSION .................................................................................. 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alabama v. U.S. Army Corps of Engineers*,
424 F.3d 1117 (11th Cir. 2005) ........................................................................24

*Anderson v. Celebrezze*,
460 U.S. 780 (1983)...........................................................................................10

*Arcia v. Fla. Sec'y of State*,
772 F.3d 1335 (11th Cir. 2014) ........................................................................21

*Ariz. Sec'y of State's Office v. Feldman*,
137 S. Ct. 446 (2016).........................................................................................23

*Benisek v. Lamone*,
138 S. Ct. 1942 (2018).......................................................................................17

*Burdick v. Takushi*,
504 U.S. 428 (1992)...........................................................................................10

*Bush v. Gore*,
531 U.S. 1046 (2000).....................................................................................2, 20

*Bush v. Gore*,
531 U.S. 98 (2000).............................................................................................20

*Chamber of Commerce of U.S. v. Edmondson*,
594 F.3d 742 (10th Cir. 2010) ..........................................................................21

*Crawford v. Marion Cty. Election Bd.*,
553 U.S. 181 (2008)...............................................................................11, 12, 13

*Dunn v. Blumstein*,
405 U.S. 330 (1972)...........................................................................................20

*Fishman v. Schaffer*,
429 U.S. 1325 (1976) (Marshall, J., in chambers)..................................15, 16, 23

*Fla. Democratic Party v. Detzner*,
2016 WL 6090943 (N.D. Fla. Oct. 16, 2016)............................................3, 6, 14

*Fulani v. Hogsett,*
   917 F.2d 1028 (7th Cir. 1990) ............................................................16

*Griffin v. Roupas,*
   385 F.3d 1128 (7th Cir. 2004) ...........................................................11

*Hand v. Scott,*
   888 F.3d 1206 (11th Cir. 2018) ................................................10, 25

*Hunter v. Hamilton Cty. Bd. of Elections,*
   635 F.3d 219 (6th Cir. 2011) ............................................................20

*Lair v. Bullock,*
   697 F.3d 1200 (9th Cir. 2012) ...........................................................24

*Lemons v. Bradbury,*
   538 F.3d 1098 (9th Cir. 2008) ...........................................................18

*McDonald v. Bd. Of Election Comm'rs of Chi.,*
   394 U.S. 802 (1969)............................................................................12

*Nader v. Keith,*
   385 F.3d 729 (7th Cir. 2004) .............................................................11

*North Carolina v. League of Women Voters of N.C.,*
   135 S. Ct. 6 (2014)............................................................................23

*Perez v. Wells Fargo N.A.,*
   774 F.3d 1329 (11th Cir. 2014) ........................................................23

*Protect Marriage Ill. v. Orr,*
   463 F.3d 604 (7th Cir. 2006) .............................................................18

*Roe v. Alabama,*
   43 F.3d 574 (11th Cir. 1995) ....................................................17, 22

*Rosario v. Rockefeller,*
   410 U.S. 752 (1973)............................................................................14

*Scott v. Roberts,*
   612 F.3d 1279 (11th Cir. 2010) ........................................................22

*Serv. Emps. Int'l Union Local 1 v. Husted*,
  698 F.3d 341 (6th Cir. 2012) ............................................................24

*Soules v. Kauaians for Nukolii Campaign Comm.*,
  849 F.2d 1176 (9th Cir. 1988) ..........................................................17

*Sw. Voter Registration Educ. Proj. v. Shelley*,
  344 F.3d 914 (9th Cir. 2003) ............................................................17

*Timmons v. Twin Cities Area New Party*,
  520 U.S. 351 (1997).........................................................................13

*Toney v. White*,
  488 F.2d 310 (5th Cir. 1973) (en banc) ...........................................16

*U.S. Term Limits, Inc. v. Thornton*,
  514 U.S. 779 (1995).........................................................................13

*United States v. Barfield*,
  396 F.3d 1144 (11th Cir. 2005) ........................................................15

*United States v. Heard*,
  No. 18-10479, 2018 WL 4181736 (11th Cir. Aug. 30, 2018)............17

*Veasey v. Perry*,
  769 F.3d 890 (5th Cir. 2014) ............................................................23

*Wexler v. Anderson*,
  452 F.3d 1226 (11th Cir. 2006) ........................................................11

**Statutes**

25 Pa. Stat. Ann. § 3146.8 .....................................................................14

2001-40 Laws of Fla. 42 ..........................................................................5

2004-232 Laws of Fla. 1 ...........................................................................5

2017-45 Laws of Fla. 1 .............................................................................6

Ariz. Rev. Stat. § 16-550(A) ..................................................................11

Cal. Elec. Code § 3019(a)(A)(1)..............................................................11

v

Colo. Rev. Stat. § 1-7.5-107.3 ...................................................................11

Fla. Stat. § 101.043 ..............................................................................7, 12

Fla. Stat. § 101.048 ..............................................................................*passim*

Fla. Stat. § 101.65 ................................................................................7, 12

Fla. Stat. § 101.68 ................................................................................*passim*

Fla. Stat. § 101.69(2) ...............................................................................13

Fla. Stat. § 102.112(2) ..............................................................................22

Fla. Stat. § 102.141(4)(a) ..........................................................................13

Fla. Stat. § 102.141(4)(b) ..........................................................................13

Fla Stat. § 102.168 ...................................................................................24

Haw. Rev. Stat. § 15-9(c) ...........................................................................11

Ind. Code § 3-11-10-15(3) ...........................................................................11

Iowa Code § 53.18(3) .................................................................................11

La. Stat. § 18:1308 ..................................................................................14

Mich. Comp. Laws § 168.766 .........................................................................11

Miss. Code. Ann. § 23-15-637 ........................................................................14

N.D. Cent. Code § 16.1-07-12 ........................................................................11

Or. Rev. Stat. § 254.470(9) .........................................................................11

Tex. Elec. Code § 87.041(b)(2) ......................................................................11

Utah Code Ann. § 20A-3-308(1)(b)(ii) .................................................................11

Wash. Rev. Code § 29A.40.110 ........................................................................11

**Other Authorities**

Fla. Dep't of State, FAQ – Voting,
    https://dos.myflorida.com/elections/contacts/frequently-asked-
    questions/faq-voting/ ...............................................................................8

NRSC, *About*, https://www.nrsc.org/about-nrsc/....................................................21

OpenSecrets.org, https://www.opensecrets.org/news/2018/11/2018-
    midterm-records-shatter/................................................................................21

*Vote-by-Mail*, Fla. Department of State, Div. of Elections,
    https://dos.myflorida.com/elections/for-voters/voting/vote-by-mail/ .................7

Vote-by-Mail, Fla. Dept. of State, Div. of Elections,
    https://dos.myflorida.com/elections/for-voters/voting/vote-by-mail/ ...............12

## INTRODUCTION

This emergency motion asks this Court to stay an extraordinary order directing the Florida Secretary of State to hold a new Election Day by reopening the polls statewide for several days. The court's order comes more than a week after the real Election Day, and authorizes more than 5,000 persons across Florida's 67 counties to go to their county supervisor's office and "cure" vote-by-mail and provisional ballots that were ruled invalid under a straightforward application of existing Florida law because the signature accompanying the ballot did not match any of the voter's signatures on file. *See* Fla. Stat. § 101.68 (vote-by-mail); Fla. Stat. § 101.048 (provisional).

Local canvassing boards across the state are in the midst of the frenetic recount process, with the November 18 deadline for certifying the election results fast approaching. The ruling below threatens to plunge the process into chaos, with potentially thousands of people showing up in the next 48 hours demanding the opportunity to individually litigate whether they were "belatedly notified" of their statutory right to cure a mismatched signature, and have now provided sufficient information to "cure" the defect in the ballot they submitted. The district court's order, issued at 1 am this morning (November 15), directs the Secretary to notify the court by 5 pm today whether he intends to comply, and then to issue a directive to all election supervisors statewide that the polls are to reopen to permit the multi-day

1

"cure" period to commence, in which each individual who was "belatedly notified" of his or her statutory cure may relitigate the signature-mismatch issue. This is a textbook example of a court changing the rules *after* Election Day by replacing the law enacted by the Legislature with a judicially-developed regime. *See Bush v. Gore*, 531 U.S. 1046 (2000); U.S. Const., Art. I, sec. 4 (time, place and manner for conducting federal elections "shall be prescribed in each State by the Legislature thereof").

Emergency relief—including an administrative stay sufficient to preserve the status quo until this Court can consider the merits of this stay request—is warranted. Because the statewide directive will issue tomorrow morning, to enable a "cure" period on November 16 and 17, Appellant respectfully requests a ruling on a stay (or administrative stay) by **<u>8 a.m. tomorrow morning</u>**.

Appellant is likely to succeed on the merits. The basis of the district court's order is that Florida's statutory scheme violates the Constitution because signatures are verified by "laypersons" (*i.e.*, county election officials) who lack formal forensic training in document authentication, and that the statutory procedure for curing excluded ballots is insufficient because it is possible some voters did not receive enough notice to cure a signature mismatch before Election Day. This rationale is meritless. Verifying a voter's identity by comparing signatures is a common practice throughout the nation, and has been upheld by many courts. Florida's signature-

match requirement is not burdensome and reasonably related to the state's compelling interest in voter identification. It is certainly far less burdensome than the voter-ID requirement the Supreme Court upheld in *Crawford*. 553 U.S. at 198 (discussing "inconvenience of making a trip to the [bureau of motor vehicles], gathering the required documents, and posing for a photograph" but finding no substantial burden). Here, voters only need sign a piece of paper and not adduce any ID at all. Florida law even provides a robust cure process that requires election officials to notify voters of a mismatch and give them the opportunity to cure a mismatched signature before Election Day. In fact, the Florida Legislature amended the law in 2016 after the same district court held that the cure process was necessary to make the statute *constitutional*. *See Fla. Democratic Party v. Detzner*, 2016 WL 6090943 (N.D. Fla. Oct. 16, 2016).

In the absence of a stay, Appellant and the public interest will be irreparably harmed. The court's order upsets settled expectations that the law governing this election would be the law enacted by the Legislature and in place on Election Day. Indeed, Appellees' lawsuit was strategically timed: they waited until days *after* the election, saw that the results were not in their favor, and then filed this lawsuit alleging that Florida's election law is unconstitutional. These tactics are impermissible. This challenge could have been brought months if not years ago.

3

If the court's order mandating a statewide "directive" is not stayed, beginning tomorrow, thousands of persons will show up, or claim by email, that they were "belatedly notified" of the opportunity to cure their mismatched ballots. How will local officials determine when the person in fact received notice? Will they demand evidence or just take people at their word? The court's order provides no standards for the local boards to make these determinations. In fact, the court's order does not even require local election officials to notify voters that the polls have been re-opened, leading to a situation where voters flood one supervisor's office but not another. And because this order comes more than a week after Election Day, when the initial returns have been widely publicized by national media, individual voters will have differing incentives to go back to the polls, thus forcing Appellant NRSC, and the candidates themselves, to go back into campaign mode for an Election Day do-over, exhorting their supporters to the polls to participate in the cure process. Indeed, Appellees have just filed a motion demanding that the court order the Secretary to publicly reveal, by name, all persons whose ballots were rejected based on a signature mismatch, so that Appellees can hustle those persons back to the polls.

There is no constitutional defect in Florida law. The district court's extreme and extraordinary order changing the rules after Election Day must be stayed.[1]

---

[1] Additionally, Appellant respectfully requests that the Court issue an administrative stay if necessary.

4

## STATEMENT OF THE CASE

Florida allows voting by mail as a convenient alternative to in-person voting at the polls on Election Day to encourage participation in the electoral process. To ensure that voters are able to exercise that right without undermining the state's important interest in orderly, legitimate elections, Florida law requires that vote-by-mail voters, as well as voters casting provisional ballots, provide a signature, and that the signature match the signature on file with the Secretary of State. Fla. Stat. §§ 101.048(2)(b)(1), 101.068(2)(c). These requirements verify voters' identities and safeguard the integrity of the electoral process. By offering both mail and provisional ballots, in addition to in-person voting, Florida law enables voters to exercise their right to vote through a variety of avenues, balanced against the interest of ensuring legitimacy.

The laws in place today are the product of changes implemented during the past two decades. Over that time, the Florida legislature has significantly *relaxed* the requirements for voting by mail or by provisional ballot. Until 1996, Florida law required that absentee ballots be notarized and contain the signatures of two witnesses who were registered to vote in Florida. 1996 Laws of Fla. 47. The voter was also required to attest that one of the statutorily recognized justifications for casting an absentee ballot was satisfied. *Id.* In 1996, the Legislature amended the law to require the signature of only one witness. *Id.* A significant change followed

5

in 2001, when the Legislature amended the law to permit *all* voters to cast their ballots by mail for any reason—or no reason at all. 2001-40 Laws of Fla. 42. Then in 2004, the Florida Legislature did away entirely with the witness-signature requirement for vote-by-mail ballots. 2004-232 Laws of Fla. 1.

This 2004 change was significant, because eliminating the witness-signature requirement left the signature-match requirement as the sole means to assure the identity of the voters casting their ballots by mail. Given the importance of that single mechanism, the Legislature also enacted a statute rejecting all mismatched-signature ballots. *See generally* Florida Staff Analysis, H.B. 7013, P. 4, 5 (May 21, 2013) (referring to "the integrity of the electoral process").

In 2017, the law on vote-by-mail ballots changed again—and once more, the change benefitted voters by providing a procedural safeguard—an opportunity to cure ballots with mismatched signatures. Appellees are well aware of the cure mechanism, as they were the catalyst of its enactment. In 2016, Appellees brought suit in federal court, arguing that the Constitution required Florida to provide an opportunity to cure mismatched-signature ballots. *Fla. Democratic Party v. Detzner*, No. 4:16-cv-607-MW/CAS, 2016 WL 6090943, at *1 (N.D. Fla. Oct. 16, 2016). The court agreed, and granted Appellees the very relief they sought: an order requiring the state to institute a cure period for mismatched-signature ballots that was the same as the cure period for no-signature ballots: until 5 p.m. the day before

6

the election.  *Id.* at \*9-10.  The 2016 election was then held in accordance with this new requirement, and Appellees did not lodge any further challenges to the new signature-match rule that they helped create or to its administration.

As part of Florida's effort to gradually implement convenient and effective systems that safeguard election integrity and promote the opportunity to vote, the Legislature duly codified the *Detzner* ruling in 2017.  *See* 2017-45 Laws of Fla. 1. Voters are provided with clear instructions about the signature-match requirement and are permitted to update their signature as late as fifteen days before the election. *Id.* §§ 98.077, 101.65.  Voters are given plenty of time to return ballots and can even track their ballots online.[2]

Provisional ballots are subject to similar requirements.  In 2001, the Florida Legislature added the requirement that provisional ballots be accompanied by a matching signature.  Fla. Stat. § 101.048.  Like the signature-match requirement on vote-by-mail ballots, the signature-match requirement for provisional ballots serves as an alternative form of identification, because provisional ballots generally are not subject to a photo ID requirement.  *Compare* Fla. Stat. § 101.043(1) (requiring photo ID for in-person voters), *with id.* § 101.043(2) (requiring voters without such identification to cast a provisional ballot).  And like vote-by-mail ballots, the voter's

---

[2]    *Vote-by-Mail*,  Fla.  Department  of  State,  Div.  of  Elections, https://dos.myflorida.com/elections/for-voters/voting/vote-by-mail/.

7

signature is compared with the signature on file with the county. *Id.* § 101.048(2)(b)(1). Voters who cast provisional ballots also have an opportunity to cure the issue that caused them to file such ballots by "present[ing] written evidence supporting his or her eligibility to vote . . . by no later than 5 p.m. on the second day following the election." *Id.* § 101.048(1). These requirements are provided online in direct, easy-to-understand language.[3]

After the 2016 election, Appellees did not seek any further relief, but instead sat on their hands as the 2018 election cycle got underway. As various election-related deadlines came and went, Appellees said nothing about the purported statutory problems.

On November 8, 2018—weeks after the deadline passed for election officials to begin sending voters vote-by-mail ballots, and two days after the polls closed on Election Day—Appellees filed this lawsuit in the United States District Court for the Northern District of Florida, challenging the very signature-mismatch process they helped create in 2016. In particular, Appellees alleged that the signature-matching requirements are unconstitutional and asked the district court to enter an order requiring state officials to count *all* ballots—*even those with mismatched signatures*.

---

[3]  *See, e.g.*, Fla. Dep't. of State, FAQ – Voting, https://dos.myflorida.com/elections/contacts/frequently-asked-questions/faq-voting/.

The district court took the unusual steps of issuing subpoenas to witnesses for a hearing on November 14, 2018 including the Leon County Supervisor of Elections—and "direct[ed] the parties attention" to an issue that had not been raised by any party—whether the fact that Section 101.68(2)(c)(4) "provides electors and candidates a mechanism to challenge ballots as allegedly illegal … but does not provide [them] an opportunity to challenge rejected ballots as legal" is unconstitutional. *See* App-147-49.

At 1 a.m. the morning after the  hearing the district court granted Appellees' motion for a preliminary injunction, holding that the signature-mismatch requirements violate the Constitution because some voters apparently received notice of a signature-mismatch problem after it was too late to cure under the process required by the court's 2016 order and the consequent rewrite of Florida election law.  The court determined that its previous rewrite of Florida law "was intended to solve the inherent problems in signature matching, but the opportunity to cure has proven illusory."  Order at 26.  The court then decided to try a new approach.  Under the court's new order—which the court applied to this election, after the votes have been cast and the statutory deadline to cure had passed—the Secretary must "allow voters who have been belatedly notified they have submitted a mismatched-signature ballot to cure their ballots by November 17, 2018, at 5:00 p.m."  Order at 33.  The court did not provide Florida election officials with any guidance as to how to define

9

the category of "voters who have been belatedly notified," nor did the court provide any standard for proving whether or not a voter had been notified in time to comply with the statutory cure provisions. *Id.*

Florida's election process is already in a state of upheaval, and the district court's ruling will only make thing worse, disrupting the recounts that are taking place throughout the State at this moment. Moreover, absent a stay, ballots that are legally invalid under Florida law almost certainly will be combined with valid ballots in the same pool, forever tainting this year's election and making this case effectively moot.

## ARGUMENT

The Court considers four factors when presented with a motion for a stay pending appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hand v. Scott*, 888 F.3d 1206, 1207 (11th Cir. 2018) (quotation marks omitted); *see also* 11th Cir. R. 27-1(b)(2). Each of these factors weighs decisively in favor of a stay.

10

## I.    NRSC Is Likely To Succeed On Appeal.

### A.    Appellees' Legal Challenge Fails On The Merits.

Right-to-vote challenges are analyzed under the burden-shifting framework of *Anderson-Burdick*, as the district court recognized.  *See Anderson v. Celebrezze*, 460 U.S. 780 (1983); *Burdick v. Takushi*, 504 U.S. 428 (1992).   Under this framework, when a law "imposes only reasonable, nondiscriminatory restrictions upon voters' rights, the State's important regulatory interests are generally sufficient to sustain the regulation."  *Wexler v. Anderson*, 452 F.3d 1226, 1232 (11th Cir. 2006).

Florida's signature match requirement easily satisfies that requirement. "There is no question about the legitimacy or importance of the State's interest in counting only the votes of eligible voters."  *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 196 (2008) (plurality).  Likewise, Florida has the "closely related" but distinct "interest in protecting public confidence 'in the integrity and legitimacy of representative government.'"  *Id.* at 197.

These concerns apply with particular force here because "voting by mail makes vote fraud much easier to commit."  *Nader v. Keith*, 385 F.3d 729, 734 (7th Cir. 2004).  Voting by mail "is to voting in person as a take-home exam is to a proctored one."  *Griffin v. Roupas*, 385 F.3d 1128, 1131 (7th Cir. 2004).  Florida's signature-match requirement, like that imposed by many other states (including all

11

three that conduct elections entirely by mail), safeguards these interests.[4]  A voter's signature on the certificates accompanying vote-by-mail and provisional ballots takes the place of the photo ID required of in-person voters.  *See* Fla. Stat. § 101.043(1).  This requirement is not burdensome, and it is reasonably related to the state's compelling interest in voter identification.

Vote-by-mail voters whose signatures do not match are "immediately notif[ied]" and provided an opportunity to cure up until 5:00 p.m. the day before the election.   Fla. Stat. § 101.68(4)(a).  The fact that some tiny subset of vote-by-mail voters were unable to cure a signature-mismatch because of a delay in receiving notice or submission of their ballot after the cure deadline does not make the law unconstitutional.

The Constitution does not guarantee a right to vote-by-mail, *see McDonald v. Bd. Of Election Comm'rs of Chi.*, 394 U.S. 802, 807-08 (1969), but Florida allows it in order to encourage participation in the electoral process.  When Florida voters elect to vote by mail instead of in person, they are on notice that: (1) they must sign their ballots; (2) their signature must match voter-registration file; and (3) they can

---

[4]  *E.g.*, Colo. Rev. Stat. § 1-7.5-107.3; Or. Rev. Stat. § 254.470(9); Cal. Elec. Code § 3019(a)(A)(1); Ariz. Rev. Stat. § 16-550(A); Utah Code Ann. § 20A-3-308(1)(b)(ii); Haw. Rev. Stat. § 15-9(c); Ind. Code § 3-11-10-15(3); Mich. Comp. Laws § 168.766; Iowa Code § 53.18(3); N.D. Cent. Code § 16.1-07-12; Tex. Elec. Code § 87.041(b)(2); Wash. Rev. Code § 29A.40.110.

12

submit a cure until 5:00 p.m. the day before the election.  Fla. Stat. § 101.65; Vote-by-Mail, Fla. Dept. of State, Div. of Elections, https://dos.myflorida.com/elections/for-voters/voting/vote-by-mail/.  Importantly, Florida provides all vote-by-mail voters an online system to track the status of their ballots.  And voters who request a vote-by-mail ballot also have the opportunity to change their mind and vote in person.  Fla. Stat. § 101.69(2).

Deadlines in *any* form limit the right to vote, but states do not—and cannot—allow voting indefinitely.  *See Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 357-58 (1997).  For states undisputedly have a strong interest in "orderly administration" of elections, *Crawford*, 553 U.S. at 196, which Florida's 5:00 p.m. day-before-the-election cure deadline strongly supports.  *See also U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 834 (1995) (discussing state's interest in "orderly, fair, and honest elections 'rather than chaos.'").  Election Day and its aftermath are incredibly busy and frenetic as election officials verify, count, and certify the number of votes cast—as recent events in Florida well illustrate.  Election officials must upload "results of all early voting and vote-by-mail ballots that have been canvassed and tabulated" by 7 p.m. prior to Election Day, Fla. Stat. § 102.141(4)(a), and the canvassing board must report "all early voting and all tabulated vote-by-mail results" to the Department of State 30 minutes after the polls close, and update precinct election results "at least every 45 minutes until all results are completely reported,"

13

*id.* § 102.141(4)(b).  Just as states are justified in setting poll closing times and "reasonable cutoff point[s] for registration," *Rosario v. Rockefeller*, 410 U.S. 752, 760 (1973), Florida is plainly justified in imposing its signature-mismatch cure deadline.  That is especially so since the 5:00 p.m. day-before-the-election deadline was the *very same deadline previously ordered by the district court.  See Detzner*, 2016 WL 6090943, at *9 (directing the state to provide 5:00 p.m. day-before-the-election cure deadline); Fla. Stat. § 101.68(4)(a) (codifying these requirements).  Any issues with the signature match requirement were already addressed by the district court's creation of the notice and cure opportunity in 2016, which was subsequently enacted into law.  There was no need for further tinkering, and certainly not at this late hour.  Likewise, in the midst of an ongoing recount, election officials should not now be required to adjudicate signature mismatches all over again.

**B.    The Untimeliness Of Appellees' Lawsuit Dooms The Preliminary Injunction On Appeal.**

Appellees' 2016 lawsuit also demonstrates their inexcusable delay in bringing this case.  As a matter of well-established precedent, this delay forecloses a preliminary injunction—and thus weighs strongly in favor of a stay.  The doctrine of laches enforces this requirement, barring a claim when "(1) there was a delay in asserting a right or a claim, (2) the delay was not excusable, and (3) the delay caused [an opposing party] undue prejudice."  *United States v. Barfield*, 396 F.3d 1144, 1150 (11th Cir. 2005).

14

Here, Appellees waited until *after the election* to file suit even though the signature-match requirement has been law for about *twenty years*. *See* Fla. Stat. § 101.68 (absentee ballot matching requirement since 1996); *id.* § 101.048 (provisional ballot matching requirement since 2001). The matching requirement plainly "is not a new enactment," and Appellees were "sufficiently familiar with the statute's requirements and could have sued earlier." *Fishman v. Schaffer*, 429 U.S. 1325, 1330 (1976) (Marshall, J., in chambers) (denying application for an injunction against state election officials).

Appellees have no excuse for their delay. Below, they offered only that "events that have transpired recently have shown that the opportunity to cure is insufficient." App-194. But as Appellees admit, the aspects of the signature-matching process about which they complain were emphasized by the district court more than two years ago and discussed in their complaint and briefing in that case. The Court's ordered the provision of a cure with a deadline of 5 p.m. the day before Election Day, and those requirements were implemented in the 2016 election. The Florida Legislature then amended the statute to conform to the Court's directive, and the amended statutes were administered accordingly in the 2018 election. Appellees have known about the 5 p.m. deadline, in particular, since at least June 2017 when they themselves notified the district court of the statutory amendment that allowed

15

voters to cure mismatched signatures and created that deadline. See *Fla. Democratic Party v. Detzner*, No. 16-cv-607, ECF 57 (N.D. Fla. June 5, 2017).

Importantly, the 2018 election was not the first time Plaintiffs had an opportunity to see how the cure requirement would be applied—it was applied in the 2016 election per the district court's order in the prior litigation. They had extensive experience with the cure remedy and its administration in the previous prior election to come forward with any problems. They did not. This is not "a gray area where" the problem "even if known before the [current] election, was discovered at a late hour." *Toney v. White*, 488 F.2d 310, 314 (5th Cir. 1973) (en banc).

Appellees' strategic timing prejudices the Secretary, election officials, NRSC, and the public. As the Secretary explained below, Appellees' delay has prejudiced his office in its administration of election laws by creating uncertainty in the application of those laws, as well as serious expense. Similarly, Florida's sixty-seven county supervisors of elections, who are responsible for fulfilling their statutory obligations to ensure transparency and legitimacy, have also been prejudiced by Appellees' unjustified delay in asserting their claims. *See* App-125. Appellees have also prejudiced NRSC, which conducted itself in accordance with the existing regime and now must restart its get-out-the-vote operations on a tilted playing field despite all statutory deadlines for voting and curing having passed. *See Soules v. Kauaians for Nukolii Campaign Comm.*, 849 F.2d 1176, 1180 (9th Cir.

1988) ("[T]he courts have been wary lest the granting of post-election relief encourage sandbagging on the part of wily plaintiffs.").  The confusion of after-the-fact, retroactive changes to election laws also prejudices voting members of the public, who diligently followed the rules, but now will have their votes diluted.  *See Roe*, 43 F.3d at 581.  It is for good reason that "[i]nterference with impending elections is extraordinary, and interference with an election after voting has begun is unprecedented." *Sw. Voter Registration Educ. Proj. v. Shelley*, 344 F.3d 914, 919 (9th Cir. 2003) (internal citation omitted).

This intentional, prejudicial delay is particularly inappropriate in the preliminary injunction context, where the requesting party "must generally show reasonable diligence." *Benisek v. Lamone*, 138 S. Ct. 1942, 1944 (2018).  "Timing is everything."  *United States v. Heard*, No. 18-10479, 2018 WL 4181736, at *3 (11th Cir. Aug. 30, 2018).  Appellees' tactical decision to hold their lawsuit in reserve until *after* the initial returns showed them losing this election bars a preliminary injunction, if not this entire lawsuit.

### C.    The District Court's Order Is Unclear And Potentially Creates A New Constitutional Violation.

The district court's order prescribes a purported remedy but without any standard to ensure that it is applied consistently across all voters.  The order requires that county election supervisors "allow voters who have been belatedly notified they have submitted a mismatched-signature ballot to cure their ballots by November 17,

2018." Order at 33. But the order does not provide any standard for how a voter must establish that they were in fact "belatedly notified." Nor does the order define what constitutes belated notice. This will undoubtedly result in confusion as election officials across Florida attempt to comply with the court's last-minute notice—all in the context of an ongoing manual recount and looming statutory deadlines to certify the final results of the election.

In fact, the hopelessly indeterminate terms of the district court's order potentially creates a new constitutional problem. Some counties may reject all voters except those whose votes were received on or after 5:00 pm the day before the election because those counties provided notice via the online tracking system. Other counties may allow voters to merely state that they were belatedly notified. Others may require that voters sign an affidavit. Still others may make up other requirements. And each voter may also likely be subject to different standards about what constitutes "belated" notice. Some counties may decide that only voters who received notice after the 5:00 pm deadline to submit a cure affidavit constitutes belated notice. Others may decide that voters who received notice on the day before the election (or some other arbitrary deadline) constitutes belated notice because that county feels there was insufficient time to submit the cure affidavit. Still others may make their decision based on the postmarked date of the rejection notice that was sent to the voter. Some counties might decide to allow *all* mail-in voters an extra

18

two days to cure their mismatched signatures.  These different approaches—all caused by an emergency order from a federal court after an election and in the midst of an ongoing recount—would run directly afoul of the Equal Protection Clause and the "'fundamental right of each voter' to have his or her vote count on equal terms." *Hunter v. Hamilton Cty. Bd. of Elections*, 635 F.3d 219, 235 (6th Cir. 2011) (quoting *Bush v. Gore*, 531 U.S. 98, 109 (2000)).

## II.    A Stay Is Necessary To Prevent An Irreparably Damaging Restart Of The Election.

The district court order will irreparably harm NRSC by immediately rebooting the campaign as the candidates rush to find mismatch voters and urge them to cure. The imminent and unprecedented nature of this irreparable injury is underscored by the emergency motion the Appellees filed in the district court this morning seeking an injunction commanding the Secretary of State to publish the names of persons who submitted votes by mail that were rejected for signature mismatches. The district court's order threatens to set off an unprecedented post-election campaign that focuses on a few thousand individuals—their identities, perhaps, publicly revealed to campaigns and their supporters—who will be frantically urged to cure, if they can, a signature mismatch.

While supporting Governor Scott in the 2018 election, NRSC conducted itself in reliance on Florida's duly enacted statutory framework only to find out after the election was over that it will have to shift significant resources to support Governor

19

Scott's turnout efforts in what is most expensive Senate race in history. *Cf. Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1341 (11th Cir. 2014) ("organizations can establish standing to challenge election laws by showing that they will have to divert personnel and time to educating potential voters on compliance with the laws").[5] This loss of resources that could be put to other uses is unrecoverable and irreparable. *Cf. Chamber of Commerce of U.S. v. Edmondson*, 594 F.3d 742, 770-71 (10th Cir. 2010) ("Imposition of monetary damages that cannot later be recovered for reasons such as sovereign immunity constitutes irreparable injury.").

Worse, the rebooted campaign would not be conducted on a level playing field. Because the current tally is known, voters have different incentives to cure. Because Senator Nelson is behind, Democratic voters will be less complacent and more likely to attempt to cure. This is precisely why states prohibit announcing election results before the polls close: because it affects voter behavior. Retroactively changing the rules of the game after the clock has hit zero is fundamentally unfair to the NRSC and Governor Scott's campaign. *See Roe v. Alabama*, 43 F.3d 574, 581 (11th Cir. 1995) (post-election change in the applicable law "demonstrated fundamental unfairness"). Pecuniary compensation could not

---

[5] Andrew Mayersohn, *Most expensive midterms in history set several spending records*, OpenSecrets.org, https://www.opensecrets.org/news/2018/11/2018-midterm-records-shatter/.

reverse the impact of allowing this procedural irregularity, even if it were available. *Scott v. Roberts*, 612 F.3d 1279, 1295 (11th Cir. 2010).

Moreover, if this Court reverses the decision below on the merits without granting a stay, it will be too late to provide relief. The deadline to certify the election is fast approaching. *See* Fla. Stat. § 102.112(2). And there also is the substantial risk that invalid, late-cured ballots could not be identified and removed after the fact.

## III. The Public Interest In The Integrity Of Elections Far Outweighs Any Hypothetical Injury To Other Parties That Would Result From A Stay.

The public interest decisively favors staying the district court's injunction. Florida has conducted its election according to well-established and court-approved procedures and is now in the midst of a frenzied recount process. The public has a strong interest in seeing this election conclude in an orderly and trustworthy manner. There is no "exigent circumstance[]" that compelled the district court's extraordinary post-election revision to the election rules, *Fishman*, 429 U.S. at 1326 (1976) (quotation marks omitted), and certainly no circumstance that compels the district court's order to be carried out before NRSC's appeal can be heard on the merits. "[P]rocess matters." *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1332 (11th Cir. 2014). Maintaining the status quo pending an expedited appeal will enable the statewide recount to continue without disruption, while still affording Appellees the opportunity to obtain all the relief to which they might be entitled.

21

While the compelling public interest would be served by a stay, Appellees can point to no harm they will suffer if the status quo is maintained pending resolution of an expedited appeal.  If Appellees prevail at the conclusion of this appeal or any that might be taken to the Supreme Court, any ballots that must be counted can be counted and included in the election results.  Appellees will not be harmed by awaiting a final determination of the dispositive legal issues.  This is especially true because Plaintiffs have an existing and adequate statutory remedy outside of the injunction.  *See Alabama v. U.S. Army Corps of Engineers*, 424 F.3d 1117, 1127 (11th Cir. 2005).  Florida law allows "any elector qualified to vote in the election" to contest the certification of election results on the basis of the "rejection of a number of legal votes sufficient to change or place in doubt the result of the election."  Fla Stat. §§ 102.168(1), (3)(c).  Appellees may employ that orderly, statutory process to obtain any warranted relief.

## CONCLUSION

The Court should grant the Motion for a Stay Pending Appeal.  In the meantime, the Court should grant an administrative stay to preserve the status quo if necessary.

22

Respectfully submitted,

Dated: November 15, 2018

Jason Torchinsky
Holtzman Vogel Josefiak Torchinsky
PLLC
45 North Hill Drive, Suite 100
Warrenton, VA 20106
Telephone: (540) 341-8808
JTorchinsky@hvjt.law

 /s/  Thomas H. Dupree Jr.
Thomas H. Dupree Jr.
   *Counsel of Record*
Helgi C. Walker
Matthew D. McGill
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 887-8500
tdupree@gibsondunn.com
hwalker@gibsondunn.com
mmcgill@gibsondunn.com

Andy Bardos (FBN 822671)
George T. Levesque (FBN 555541)
GrayRobinson, P.A.
Post Office Box 11189
Tallahassee, Florida 32302-3189
Telephone: 850-577-9090
andy.bardos@gray-robinson.com
george.levesque@gray-robinson.com

*Attorneys for Intervenor-Defendant-Appellant*
*The National Republican Senatorial Committee*

23

## CERTIFICATE OF COMPLIANCE
## WITH TYPE-VOLUME LIMITATION, TYPEFACE
## REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.    This brief complies with the word limit of Federal Rule of Appellate Procedure 27(a)(2)(B) because it contains 5169 words, as determined by the word-count function of Microsoft Word 2010, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Eleventh Circuit Rule 32-4.

2.    This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman font.


Dated: November 15, 2018          /s/  Thomas H. Dupree Jr.
                                  Thomas H. Dupree Jr.
                                  Gibson, Dunn & Crutcher LLP
                                  1050 Connecticut Avenue, N.W.
                                  Washington, D.C. 20036
                                  Telephone: (202) 887-8500
                                  tdupree@gibsondunn.com

24

## CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2018, an electronic copy of the foregoing Appellant National Republican Senatorial Committee's Emergency Motion For a Stay and Motion to Expedite the National Republican Senatorial Committee was filed with the Clerk of Court for the United States Court of Appeals for the Eleventh Circuit using the Court's CM/ECF system and service will be accomplished on all parties by the CM/ECF system and through electronic mail upon the following:

Ronald G. Meyer
rmeyer@meyerbrookslaw.com

Gary V. Perko
gperko@hgslaw.com

Jennifer S. Blohm
rmeyer@meyerbrookslaw.com

Malcolm N. Means
mmeans@hgslaw.com

Marc Elias
MElias@perkinscoie.com

Edward M. Wenger
edward.wenger@myfloridalegal.com

Uzoma N. Nkwonta
UNkwonta@perkinscoie.com

Blaine H. Winship
blaine.winship@myfloridalegal.com

Bradley R. Mcvay
brad.mcvay@dos.myflorida.com

Jordan E. Pratt
Jordan.pratt@myfloridalegal.com

Ashley E. Davis
ashley.davis@dos.myflorida.com

Stephanie A. Daniel
Stephanie.daniel@myfloridalegal.com

Mohammad O. Jazil
mjazil@hgslaw.com

Dated: November 15, 2018

  /s/  Thomas H. Dupree Jr.
Thomas H. Dupree Jr.
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 887-8500
tdupree@gibsondunn.com