UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

DEMOCRATIC EXECUTIVE
COMMITTEE OF FLORIDA, *et al.*,

   Plaintiffs,

v.

JENNIFER KENNEDY, *et al.,*

   Defendant and Defendant-Intervenors.

Case No. 4:18-CV-00520-MW-MJF

**SECRETARY AND ATTORNEY GENERAL'S JOINT MOTION
TO DISMISS FOR FAILURE TO STATE A CLAIM**

At issue in this case is the constitutionality of Florida's signature-matching provisions for provisional and vote-by-mail ballots. *See* §§ 101.048(2)(b)(1), 101.68(2)(c)(1), Fla. Stat. But the Plaintiffs fail to state a claim for relief. This Court should, therefore, dismiss the Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Courts dismiss claims under Rule 12(b)(6) where neither the well-pleaded facts nor any reasonable inferences provide grounds for relief. *See McGinley v. Houston,* 361 F.3d 1328, 1330 (11th Cir. 2004). The Plaintiffs, for their part, must "provide the 'grounds' of . . . 'entitle[ment] to relief'" using "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). Importantly,

1

"[i]t is not . . . proper to assume that [the Plaintiffs] can prove facts that [they] ha[ve] not alleged." *Id.* at 563 n.8 (citation omitted).

While titled a "First Amendment and Equal Protection" claim concerning "Undue Burden on the Right to Vote," Count I of the Plaintiffs' Complaint alleges a violation of only the "Equal Protection Clause." DE 1 at ¶¶ 38, 39, 41. Count II is titled an "Equal Protection" claim, and alleges only an equal protection claim. *Id.* at ¶¶ 42-47. The gravamen of both counts is the alleged county-by-county variation in the process used to match signatures. DE at ¶¶ 39, 43. The Plaintiffs allege that these variations violate the requirements of *Bush v. Gore,* 531 U.S. 98 (2000). DE at ¶¶ 39, 43. Count II includes an allegation of "disparate treatment of similarly situated voters including racial minorities and young voters." *Id.* at ¶ 45.

***First***, if one considers the Plaintiffs' claims through a traditional equal protection prism, the Plaintiffs fail to state a claim because they do not allege any discriminatory intent—they allege no direct or circumstantial evidence of intent. At best, relying on a deeply flawed study, the Plaintiffs allege a disparate impact on young and minority voters as it relates to vote-by-mail ballots only. DE 1 at ¶¶ 22-23. But, even if true, these allegations are not enough for purposes of the Equal Protection Clause. As Justice Ginsburg succinctly explained, "[t]he Equal Protection Clause . . . prohibits only intentional discrimination; it does not have a disparate-impact component." *Ricci v. DeStefano*, 557 U.S. 557, 627 (2009)

2

(Ginsburg, J., dissenting) (citing *Pers. Adm. of Mass. v. Feeney*, 442 U.S. 256, 272 (1979) and *Washington v. Davis*, 426 U.S. 229, 239 (1976)); *see also Coleman v. Ct. of Appeals of Maryland*, 566 U.S. 30, 42 (2012) ("Although disparate impact may be relevant evidence . . . such evidence alone is insufficient [to prove a constitutional violation] even where the Fourteenth Amendment subjects state action to strict scrutiny."); *Bd. of Election v. Libertarian Party*, 591 F.2d 22, 24-25 (7th Cir. 1979) (explaining that ballot placement claim under the equal protection clause requires a showing of "an intentional or purposeful discrimination"); *Republican Party of N.C. v. Martin*, 980 F.2d 943, 955 (4th Cir. 1992) (explaining that equal protection claim involving voting rights requires allegation of "intentional discrimination against an identifiable political group and an actual discriminatory effect on that group").

**<u>Second</u>**, the Plaintiffs fail to state a claim under the *Bush v. Gore* standard. As an initial matter, the Secretary and Attorney General note that the U.S. Supreme Court limited *Bush v. Gore* to "the present circumstances," and so that case does not apply here. 531 U.S. at 109. Assuming for the sake of argument that *Bush v. Gore* applies, Florida's signature-matching provisions still pass muster.

*Every* signature is matched using the same statutory standards. Section 101.048(2)(b)(1) of the Florida Statutes provides that the canvassing board "shall compare the signature on the Provisional Ballot Voter's Certificate and

Affirmation with the signature on the voter's registration and, if it matches, shall count the ballot." Section 101.68(2)(c)(1) of the Florida Statutes provides that the canvassing board must "compare the signature of the elector on the voter's certificate or on the vote-by-mail ballot cure affidavit" to determine if the signature "matches the elector's signature in the registration books or precinct register." These statutory provisions apply statewide—no exceptions—empowering the canvassing boards to match signatures. But some variation among canvassing boards is permissible when *implementing* these statewide standards just as some variation is permissible among courts and juries when *implementing*, for example, the reasonable man standard in tort law. *Bush v. Gore* allows for this.

More specifically, in *Bush v. Gore*, the U.S. Supreme Court was concerned with a statewide recount that lacked "specific standards to ensure its equal application" from ballot to ballot, precinct to precinct, or recount team to recount team when determining a voter's intent. 531 U.S. at 106. The U.S. Supreme Court left unchanged the rule that "local entities, in the exercise of their expertise, may develop different systems for implementing elections." *Id.* at 109. Thus, even if there is some county-by-county variation, that variation is okay; "local variety . . . can be justified by concerns about cost, the potential value of innovation, and so on." *Wexler v. Anderson*, 452 F.3d 1226, 1233 (11th Cir. 2006) (internal quotations omitted); *see also Short v. Brown*, 893 F.3d 671, 679 (9th Cir. 2018)

4

(rejecting theory that California must impose a new all-mail voting system on all counties and noting that "democratic federalism permits states to serve as laboratories . . . By phasing in a new election system gradually . . . California is doing just that"); *Barber v. Bennett,* 2014 WL 6694451 at *15 (D. Ariz. Nov. 27, 2014) (noting that even *Bush v. Gore* did not require uniformity from county-to-county in its equal protection analysis).

**_Third_**, the Plaintiffs fail to state a claim under the *Anderson-Burdick* standard ordinarily used to address election-related concerns raised under the First and Fourteenth Amendments—concerns that implicate the First Amendment's rights of expression and association that the Plaintiffs do *not* actually plead. *See Anderson v. Celebrezze,* 460 U.S. 780, 789 (1983); *Burdick v. Takushi,* 504 U.S. 428, 433 (1992). The *Anderson-Burdick* standard provides a flexible framework where this Court "must weigh 'the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate' against 'the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights." *Burdick,* 504 U.S. at 434 (quoting *Anderson,* 460 U.S. at 789).

Florida's signature-matching provisions are the kind of "reasonable, politically neutral regulations" that the U.S. Supreme Court has "repeatedly

5

upheld." *Burdick,* 504 U.S. at 438. These provisions make it easier—not harder—to vote. Until 1996, Floridians hoping to use the convenience of vote-by-mail needed to have their absentee ballots notarized or to include the signatures of two witnesses who themselves were registered to vote in Florida; in 1996, the Florida Legislature allowed only one witness signature and, in 2004, the Florida Legislature repealed the witness requirement altogether. Ch. 2004-232, § 1, Laws of Fla.; Ch. 96-57, § 4, Laws of Fla. *Id.* Only since 2001 have Floridians been able to vote-by-mail without a statutorily recognized justification for doing so. Ch. 2001-40, § 53, Laws of Fla. And, unlike in-person voting, voting-by-mail or through a provisional ballot usually does not require the voter to present photo identification. *See* §§ 97.0535, 101.048(2), 101.6923(2), Fla. Stat. Without a notarization requirement, witness requirement, or photo identification requirement, matching signatures on the vote-by-mail or provisional ballot envelopes with signatures on file provides the only means of ensuring that voters are who they say they are, and thereby preventing ineligible votes from diluting eligible votes.[1]

---

[1] "In deciding whether to dismiss, the court may consider only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, *and matters of which the judge may take judicial notice.*" 2 Moore's Fed. Prac.—Civil § 12.34 (2018) (emphasis added) (citing, among other things, *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999) where the court, when considering motion to dismiss in securities fraud case, was permitted to take judicial notice of relevant public documents required to be filed with SEC, for purpose of determining what statements the documents contain and not to prove truth of documents' contents); *see also Horne v. Potter*, 392 F.

Put bluntly, the signature-matching provisions provide *minimal* safeguards that, in turn, make it possible for Floridians to exercise their right to vote through a convenient no-excuse vote-by-mail ballot and, when all else fails, a safety-net provisional ballot. *See generally Fla. St. Conf. of NAACP v. Browning,* 569 F. Supp. 2d 1237, 1251 (N.D. Fla. 2008) (discussing Florida's "rich history of absentee-ballot fraud, including at least two elections in which courts invalidated every single absentee ballot because of widespread fraud"); *Nader v. Keith,* 385 F.3d 729, 734 (7th Cir. 2004) ("voting by mail makes vote fraud much easier to commit"); *Griffin v. Roupas,* 385 F.3d 1128, 1131 (7th Cir. 2004) ("[A]bsentee voting is to voting in person as a take-home exam is to a proctored one.").

---

App'x 800, 802 (11th Cir. 2010) ("A district court may take judicial notice of certain facts without converting a motion to dismiss into a motion for summary judgment.").

District courts may take judicial notice of state statutes. *See, e.g., Chaker v. Crogan*, 428 F.3d 1215, 1223 n.8 (9th Cir. 2005); *Demos v. City of Indianapolis*, 302 F.3d 698, 706 (7th Cir. 2002) (noting that district court properly took judicial notice of previously unmentioned state statutes as "matters of public record such as state statutes, city charters, and city ordinances fall within the category of 'common knowledge' and therefore are proper subjects for judicial notice.

District courts may also take judicial notice of information published on government websites. *See, e.g., Williams v. Lew*, 819 F.3d 466, 473 (D.C. Cir. 2016) (taking judicial notice of GAO Report, discussing market effects of "debt limit impasses," available on GAO website); *Cannon v. District of Columbia*, 717 F.3d 200, 205 n.2 (D.C. Cir. 2013) (taking judicial notice of contents of document, available on D.C. Retirement Board's website, summarizing operation of pension fund for its beneficiaries); *see also* 1 Weinstein's Fed. Evidence § 201.12 (2018) (collecting similar cases from the Second, Fourth, Ninth, and Tenth Circuits).

Thus, the State's signature-matching provisions further the State's compelling interest in (1) upholding the policy choices of Florida's duly-elected representatives that provide for no-excuse vote-by-mail and safety-net provisional ballots, (2) preventing errors in the election administration process, (3) counting the votes of eligible voters and not diluting those eligible votes through the inclusion of ineligible votes, and (4) protecting the long-term integrity and legitimacy of the election process. *See, e.g., Crawford v. Marion Cnty. Elec. Bd.,* 553 U.S. 181, 196-97 (2008); *Purcell v. Gonzalez,* 549 U.S. 1, 4 (2006); *Summit Cnty. Dem. Cent. & Exec. Comm. v. Blackwell,* 388 F.3d 547, 551 (6th Cir. 2004).

Weighed against the State's side of the *Anderson-Burdick* balance, is the alleged inconvenience that the signature-matching provisions might impose on the voters. To be sure, the signature-matching provisions impose, at most, an "inconvenience" and do not, in themselves, cause any disenfranchisement as the Plaintiffs claim. *Cf. Crawford,* 553 U.S. at 198 (upholding photo identification requirement that placed on a prospective voter the "inconvenience of making a trip to the [DMV], gathering required documents, and posing for a photograph").

*Every* voter who chooses vote-by-mail "can track online the status of his or her ballot through a link within the Division of Elections' Voter Information Lookup or through their county Supervisor of Elections' website." *Vote-by-Mail,* Fla. Dep't of State, Div. of Elections, https://dos.myflorida.com/elections/for-

8

voters/voting/vote-by-mail/.² Clear and concise instructions are provided for the entire process of requesting and casting a vote-by-mail ballot. *Id.* Concerned voters can *preemptively* submit cure affidavits by mail, fax, or e-mail—using certain photo identifications, like a driver's license, to negate the need for signature-matching altogether. § 101.68(4), Fla. Stat. Concerned voters can also vote in-person should they change their minds (or simply in an abundance of caution) even after requesting a vote-by-mail ballot. § 101.69(2), Fla. Stat.

*Every* voter who casts a provisional ballot must "be given written instructions regarding [his or her] right to provide the supervisor of elections with written evidence of his or her eligibility to vote and regarding the free access system" that allows the voter to determine whether the canvassing board ultimately counted the provisional ballot and, if not, the reason why.³ § 101.048(5), Fla. Stat. Voters have until "5 p.m. on the second day following the election" to provide the necessary evidence establishing eligibility to vote. *Id.* § 101.048(1). "A ballot of a person casting a provisional ballot *shall* be counted *unless* the canvassing board determines by *a preponderance of the evidence* that the person was not entitled to vote." *Id.* § 101.048(2)(a) (emphasis added).

---

² Please see note 1 *supra* for the appropriateness of considering this website at the motion to dismiss stage.

³ Some voters faced with signature match issues may also avoid the provisional ballot altogether by complying with the requirements of § 101.49 of the Florida Statutes.

While there is arguably no constitutional requirement for notice and an opportunity to cure mismatching signatures, *see Protect Marriage Ill. v. Orr,* 463 F.3d 604, 608 (7th Cir. 2006), it is worth repeating that this State provides such an opportunity for vote-by-mail ballots. *See* § 101.68(4), Fla. Stat. Provisional ballots—ballots of last resort—are in themselves a kind of cure when all else fails. Again, these safety-net ballots provisional "shall be counted" unless evidence of *in*eligibility outweighs the presumption of eligibility. *Id.* § 101.048(2)(a).

Considered within the context of the broader statutory scheme, at most, the State's signature-matching provisions for vote-by-mail and provisional ballots impose an inconvenience on the right to vote. These provisions do not, in themselves, cause any disenfranchisement even though they might filter out some potential voters who choose not to vote in-person *or* track their ballots *or* update their signatures *or* follow instructions *or* preemptively cure through mail, fax, or e-mail.[4] *Compare Frank v. Walker,* 768 F.3d 744, 749 (7th Cir. 2014) (noting that when a "procedural step filters out some potential voters," "[n]o one calls this effect disenfranchisement") *and Friedman v. Snipes*, 345 F. Supp. 2d 1356, 1376-

---

[4] Information previously provided to this Court shows that 5,586 vote-by-mail ballots and 100 provisions ballots were rejected because of mismatching signatures. DE 72-1. For a point of reference, please note that 8,305,929 ballots were cast during the 2018 General Election, making the number of ballots rejected for mismatching signatures 0.0673% and 0.0012% of the total. *See* https://results.elections.myflorida.com/Index.asp?ElectionDate=11/6/2018&DATAMODE=.

10

77 (S.D. Fla. 2004) (noting that "Plaintiffs mischaracterize Fla. Stat. § 101.67(2)" for it "does not deny the right to vote to a class of persons" but rather imposes a burden with which voters must comply) *with* DE 46 at 24 ("Here, the injury is the deprivation of the right to vote based on a standardless determination made by laypeople that the signature on a voters' vote-by-mail or provisional ballot does not match the signature on file with the supervisors of elections.").

When weighed on the *Anderson-Burdick* balance, the State's compelling interests must prevail. But for the minimal safeguards the signature-matching provisions provide, the State might find it difficult to offer the convenience of a no-excuse vote-by-mail ballot—without notaries, witnesses, and photo identification—or the safety-net provisional ballot for when all else fails. *See Crawford,* 553 U.S. at 196-97; *Wexler,* 452 F.3d at 1232; *Summit,* 388 F.3d at 551; *Prigmore v. Renfro,* 356 F. Supp. 427, 432 (N.D. Ala. 1972) *aff'd* 410 U.S. 919 (1973) ("The right to vote is unquestionably basic to a democracy, but the right to an absentee ballot is not.").

WHEREFORE the Secretary and Attorney General respectfully ask this Court to dismiss the Complaint under Rule 12(b)(6) for failure to state a claim.

***

## **CERTIFICATE OF COMPLIANCE WITH LOCAL RULES**

The undersigned certifies that the foregoing complies with the size, font, and formatting requirements of Local Rule 5.1(C), and that the foregoing complies with the word limit in Local Rule 7.1(F); the foregoing contains 2,653 words, excluding the case style, signature block, and certificates.

***

Dated:  January 31, 2019

ASHLEY B. MOODY, ATTORNEY GENERAL
STATE OF FLORIDA

EDWARD M. WENGER (FBN 85568)
*Chief Deputy Solicitor General*
Edward.wenger@myfloridalegal.com
JORDAN E. PRATT (FBN 100958)
*Deputy Solicitor General*
Jordan.pratt@myfloridalegal.com


OFFICE OF THE ATTORNEY GENERAL
The Capitol, Pl-01
Tallahassee, Florida 32399
(850) 414-3300
(850) 410-2672 (fax)
**For the Attorney General**

Respectfully submitted by:

BRADLEY R. MCVAY (FBN 79034)
*General Counsel*
brad.mcvay@dos.myflorida.com
ASHLEY E. DAVIS (FBN 48032)
*Deputy General Counsel*
ashley.davis@dos.myflorida.com
FLORIDA DEPARTMENT OF STATE
R.A. Gray Building Suite, 100
500 South Bronough Street
Tallahassee, Florida 32399-0250
(850) 245-6536 /(850) 245-6127 (fax)

*/s/ Mohammad O. Jazil*
MOHAMMAD O. JAZIL (FBN 72556)
mjazil@hgslaw.com
GARY V. PERKO (FBN 855898)
gperko@hgslaw.com
MALCOLM N. MEANS (FBN 0127586)
mmeans@hgslaw.com
HOPPING GREEN & SAMS, P.A.
119 South Monroe Street, Suite 300
Tallahassee, FL 32301
(850) 222-7500/(850) 224-8551 (fax)
**For the Secretary of State**

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served to all counsel of record through the Court's CM/ECF system on this 31st day of January, 2019.

>/s/ Mohammad O. Jazil
> Attorney