UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

DNC SERVICES CORPORATION /
DEMOCRATIC NATIONAL
COMMITTEE, *et al.*,

   Plaintiffs,

v.

LAUREL M. LEE, in her official capacity
as Florida Secretary of State, *et al.*,

   Defendant and Defendant-Intervenors.

Case No. 4:18-CV-00520-MW/MJF

## SECRETARY OF STATE'S AND ATTORNEY GENERAL'S MOTION FOR JUDGMENT ON THE PLEADINGS

Plaintiffs challenge the facial constitutionality of Florida's signature-matching provisions for provisional and vote-by-mail ballots. ECF 100. After Plaintiffs filed their Complaint, the Florida legislature passed Senate Bill 7066 ("SB 7066"), which became law on June 28, 2019, and effective on July 1, 2019. SB 7066 alters Florida's signature-matching processes in a way that resolves the issues raised in Plaintiffs' Complaint and this Court's November 15, 2018, Order Granting Preliminary Injunction. ECF 46. Specifically, Plaintiffs' procedural due process claim is now moot, and the Court should dismiss it for that reason. And because Plaintiffs do not allege facts that entitle them to relief on any of the claims they have

asserted, the Court should grant judgment in favor of the Secretary of State and the Attorney General ("Defendants") under Federal Rule of Civil Procedure 12(c).

## OVERVIEW

SB 7066 makes numerous changes to Florida's signature-matching processes. At least four alter the legal issues raised in Plaintiffs' Complaint.

*First*, SB 7066 creates a uniform standard for determining whether a signature should be rejected as a mismatch. To reject a ballot, canvassing boards now must find a mismatch by majority vote, applying the "beyond a reasonable doubt" standard. §§ 101.048(2)(b)2, 101.68(2)(c)1.b, Fla. Stat.[1] In other words, any doubt as to whether a signature matches must be resolved in favor of counting the vote, and a ballot will only be rejected if there is no reasonable doubt that the signature on the ballot does not match the signature on file.

*Second*, SB 7066 requires supervisors of elections and county canvassing boards to undergo "formal signature matching training," which the Secretary of State must provide. *Id.* § 97.012(17). This training will ensure that Florida's uniform standard for accepting vote-by-mail and provisional ballots is applied accurately and consistently throughout the State.

---

[1] Unless otherwise noted, all references to Florida Statutes refer to the newly enacted 2019 statutes.

*Third*, SB 7066 amends the cure procedures and deadlines to ensure that all vote-by-mail and provisional voters have a meaningful chance to cure a mismatched signature. Specifically, when a canvassing board makes a determination that a signature on a vote-by-mail or provisional ballot does not match the signature on file, the supervisor of elections must, "[a]s soon as practicable," notify the voter of the mismatch by e-mail, text message, or phone; this is in addition to notice by first-class mail up until "the day before the election." *Id.* §§ 101.048(6)(a), 101.68(4)(a). Voters then have until 5 PM on the second day after the election to submit a cure affidavit. *Id.* §§ 101.048(6)(b), 101.68(4)(b). And even if the signature in the cure affidavit does not match the signature on file, the ballot is still counted if the voter submits a "valid Tier 1 form of identification"[2] with the cure affidavit. *Id.* §§ 101.048(2)(b)2, 101.68(2)(c)1.b.

*Fourth*, SB 7066 modifies Florida's election-contest provisions to allow Florida circuit courts to consider the identification the voter provided with the cure affidavit in addition to the signatures provided. It also clarifies that the election-contest provisions apply to provisional ballots in addition to vote-by-mail ballots. *Id.* § 102.168(8).

---

[2] Tier 1 forms of identification include various State-issued identification like drivers' licenses and concealed carry permits; federal-government issued identification like passports and military identification; student identification; and various other documents such as retirement center identification and credit cards that feature a photograph. §§ 101.048(6)(d)3.a, 101.68(4)(d)3.a, Fla. Stat.

# ARGUMENT

The Rule 12(c) motion for judgment on the pleadings standard is "functionally the same" as a Rule 12(b)(6) motion to dismiss, *Laird v. Aetna Life Ins. Co.*, 263 F. Supp. 3d 1231, 1236 (M.D. Ala. 2017) (citation omitted), meaning that Defendants are entitled to judgment unless the well-pleaded facts or reasonable inferences from those well-pleaded facts provide grounds for relief. *McGinley v. Houston,* 361 F.3d 1328, 1330 (11th Cir. 2004). "It is not . . . proper to assume that [the Plaintiffs] can prove facts that [they] ha[ve] not alleged." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007) (quotations omitted). While Rule 12(c) motions consider only the pleadings, courts may take judicial notice of state statutes, including amendments to them. *See, e.g.*, *Patel v. U.S. Attorney Gen.*, 917 F.3d 1319, 1323 n.2 (11th Cir. 2019) ("[I]f asked, federal courts must take judicial notice of state law.") (citing *Lamar v. Micou*, 114 U.S. 218, 223 (1885)).

Because Plaintiffs bring a facial challenge, questioning the constitutionality of the signature-matching requirement in *every* instance, they must plead facts sufficient to show that "no set of circumstances exists under which the [statutes] would be valid." *Horton v. City of St. Augustine*, 272 F.3d 1318, 1329 (11th Cir. 2001) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). This "heavy burden" is "the most difficult challenge to mount successfully." *Id.* (quoting *Salerno*, 481 U.S. at 745).

## I. DEFENDANTS ARE ENTITLED TO JUDGMENT ON PLAINTIFFS' PROCEDURAL DUE PROCESS CLAIM.

Plaintiffs' procedural due process claim, ECF 100, ¶¶ 66–73, is premised entirely on features of the signature-matching statutes that no longer exist. This claim is thus moot. If it is not moot, it should nonetheless be dismissed because Plaintiffs cannot state a claim.

### A. Plaintiffs' procedural due process claim is moot.

The Eleventh Circuit and the U.S. Supreme Court "have repeatedly held that the repeal or amendment of an allegedly unconstitutional statute moots legal challenges" to it. *Nat'l Advert. Co. v. City of Miami*, 402 F.3d 1329, 1332 (11th Cir. 2005). Only if a "superseding statute leaves objectionable features of the prior law substantially undisturbed" does the claim remain live. *Covenant Christian Ministries, Inc. v. City of Marietta*, 654 F.3d 1231, 1243 (11th Cir. 2011) (quotation omitted).

Plaintiffs' procedural due process claim is moot because it challenges alleged flaws in Florida's cure provisions that no longer exist. Specifically, Plaintiffs identify three categories of voters whom they think have been denied due process based on the inability to cure a signature mismatch: (1) vote-by-mail voters who submit ballots after the cure deadline; (2) vote-by-mail voters who submit ballots before the cure deadline but are notified of a signature mismatch after the cure deadline; and (3) all voters who cast provisional ballots. ECF 100, ¶ 69.

5

By virtue of SB 7066, those three concerns no longer implicate a justiciable case or controversy. First, Florida law no longer allows a vote-by-mail voter to submit a timely ballot after the cure deadline because SB 7066 moves the cure deadline to 5 PM on the second day *after* the election, while vote-by-mail ballots are due by 7 PM on election day. §§ 101.68(4)(b), 101.6103(2), Fla. Stat.

Second, on the face of the amended statute, there is no reason to expect that vote-by-mail voters who timely submit ballots will not have a meaningful opportunity to cure a signature mismatch. Canvassing of vote-by-mail ballots may begin as early as the 22nd day before the election and must begin by 12 PM on the day following the election. *Id.* § 101.68(2)(a). Voters whose ballots present a signature match issue are notified "[a]s soon as practicable," *id.* § 101.68(4)(a), through the home phone number, mobile phone number, and e-mail address the voters themselves list on the voter certificate that accompanies every vote-by-mail ballot. *Id.* § 101.64(1). And these voters have until the second day *after* the election to submit a cure affidavit. *Id.* § 101.68(4)(b). Properly administered, these provisions will ensure that vote-by-mail voters are notified of a signature mismatch before the cure deadline. And Plaintiffs have not advanced any claim based on speculation that the amended statute might be administered improperly—nor could they do so in a facial challenge.

Third, as to provisional voters, SB 7066 now affords them substantially identical cure procedures as those provided for vote-by-mail voters. *Compare id.* § 101.048, *with id.* § 101.68.

Because SB 7066 eliminates the three alleged flaws in Florida's signature-matching procedures, Plaintiffs' procedural due process claim is moot.

**B.     Plaintiffs fail to state a procedural due process claim.**

If the Court finds that Plaintiffs' procedural due process claim is not moot, Defendants are nonetheless entitled to judgment on the pleadings because Plaintiffs fail to state a claim that Florida's amended signature-matching regime violates procedural due process. Procedural due process protects individuals "not from the deprivation, but from the *mistaken or unjustified deprivation* of life, liberty, or property." *Carey v. Piphus*, 435 U.S. 247, 259 (1978) (emphasis added). The amount of process due is "measured by a flexible standard that depends on the practical requirements of the circumstances." *Nash v. Auburn Univ.*, 812 F.2d 655, 660 (11th Cir. 1987) (citing *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976)). To plead a procedural due process claim, Plaintiffs must allege facts sufficient to show that three factors, on balance, justify additional procedures: (1) the private interest that will be affected; (2) the risk of erroneous deprivation of such interest through existing procedures and the value, if any, of additional procedures; and (3) the

government's interest, including the fiscal and administrative burdens of providing additional procedures. *Mathews*, 424 U.S. at 335.

Plaintiffs failed to plead a plausible procedural due process claim because they have not set forth facts sufficient to demonstrate a material risk that legitimate votes will not be counted, that additional procedures would reduce any risk, or that the State's interests do not outweigh any marginal benefit from additional procedures. *Id*.

Regarding the risk that legitimate votes will not be counted, Plaintiffs' Complaint relies on purported issues in previous elections. All previous elections, however, were conducted under a different signature-matching regime, which renders them irrelevant. *See, e.g.*, ECF 100, ¶¶ 31, 43–47, 52–54. In any event, Plaintiffs cannot make this showing because Florida's procedures, as amended by SB 7066, are robust. *See supra* § I.A. And even if these procedures fail, judicial review is available in Florida state court. § 102.168, Fla. Stat.[3]

For similar reasons, the benefit of additional procedures is minimal. Plaintiffs have not identified the additional procedures they believe are appropriate. This

---

[3] In its preliminary injunction order, this Court discounted the importance of the judicial review provisions, in part, because review was limited to "the voter's signature on the voter's certificate and the signature of the voter in the registration records," and did not allow review of the identification provided with a cure affidavit. ECF 46, at 29. SB 7066 amended these provisions to allow the court to consider the identification provided with the cure affidavit. § 102.168(8), Fla. Stat.

omission, alone, is fatal to their claim. *See Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 635–36 (11th Cir. 2010) (a complaint that fails to plead an essential element fails to state a claim). In any event, in the rare situation where a legitimate ballot is mistakenly rejected under the "beyond a reasonable doubt" standard, a voter will be promptly notified and permitted to present identification to cure the rejection.

Finally, the administrative burden on the State of providing additional procedures would be significant. As Plaintiffs allege, Florida officials review millions of signatures during an election. ECF 100, ¶¶ 22–23. Florida law already requires election officials to promptly notify each individual voter of a signature mismatch and allows individual voters to present a cure affidavit. The "significant burden" of providing additional procedures—which is evident from the face of Plaintiffs' Complaint and the relevant statutes—weighs heavily in the State's favor, as the Fourth, Sixth, Seventh, and Ninth Circuits have recognized in similar contexts. *Lemons v. Bradbury*, 538 F.3d 1098, 1104–05 (9th Cir. 2008) (noting, in the referendum petition context, the "slight" interest to plaintiffs of additional procedures to confirm signature matches, compared to the "significant burden" on the State).[4]

---

[4] *Accord Kendall v. Balcerzak*, 650 F.3d 515, 528–30 (4th Cir. 2011); *Protect Marriage Ill. v. Orr*, 463 F.3d 604, 608 (7th Cir. 2006); *Taxpayers United for Assessment Cuts v. Austin*, 994 F.2d 291, 297–99 (6th Cir. 1993).

## II. DEFENDANTS ARE ENTITLED TO JUDGMENT ON PLAINTIFFS' EQUAL PROTECTION CLAIM.

Plaintiffs' equal protection claim, which requests sweeping relief based on their allegation that Florida's signature-matching requirement is unconstitutional in all its applications, must be premised on one of two theories. ECF 100, ¶¶ 60–65. Neither is plausible.

Plaintiffs' first theory is that Florida's signature-matching process "disparately impacts" various categories of voters. *Id.* ¶¶ 37–38. Plaintiffs at no point allege that Florida's signature-matching regime is discriminatory or that it reflects a discriminatory intent. Under decades of U.S. Supreme Court precedent, this omission is fatal to their equal protection claim. *See Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 272 (1979); *Washington v. Davis*, 426 U.S. 229, 239 (1976); *see also Hand v. Scott*, 888 F.3d 1206, 1210 (11th Cir. 2018) ("[O]fficial action will not be held unconstitutional solely because it results in a racially disproportionate impact. . . . Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause.") (quoting *Hunter v. Underwood*, 471 U.S. 222, 227–28 (1985) (alteration in original); *Republican Party v. Martin*, 980 F.2d 943, 955 (4th Cir. 1992) (a voting rights equal protection claim requires "intentional discrimination against an identifiable political group and an actual discriminatory effect on that group" (quotation omitted)).

Plaintiffs' second theory is that county-by-county variation in implementation of Florida's signature-matching regime violates the requirements of *Bush v. Gore*, 531 U.S. 98 (2000). ECF 100, ¶ 62. This theory also fails.

First, the U.S. Supreme Court limited *Bush v. Gore* to "the present circumstances," 531 U.S. at 109, as the Court's holding was "applicable only because it was a *court-ordered* recount." *Lemons*, 538 F.3d at 1106 (discussing *Bush v. Gore*) (emphasis added).

Second, Plaintiffs have not pleaded facts sufficient to establish that Florida's amended signature-matching process will cause material county-by-county variation in future elections. Plaintiffs' attempt to establish this claim by pleading, first, that Florida law provides no standard or training for judging signature matches. ECF 100, ¶¶ 3–4, 34–35, 41. But this allegation no longer applies because SB 7066 creates a standard and requires election officials to undergo training. §§ 97.012(17), 101.048(2)(b)2, 101.68(2)(c)1.b, Fla. Stat.

Similarly, Plaintiffs allege that there has been county-by-county variation in previous elections in terms of the rate of ballot rejections based on signature mismatch. ECF 100, ¶¶ 43–47. But these elections were held under the pre-amendment statutory regime, where no training was required. Plaintiffs cannot survive a Rule 12(c) motion by asking this Court to assume, in a facial challenge, that new training measures aimed at eliminating this variation will fail to achieve

their intended purpose. *See Twombly*, 550 U.S. at 563 n.8 ("It is not . . . proper to assume that [the Plaintiffs] can prove facts that [they] ha[ve] not alleged." (quotations omitted)).

Third, even if Plaintiffs had pleaded facts sufficient to show that some county-by-county variation in future elections might occur (and they have not), this would not give rise to an equal protection violation under *Bush v. Gore*. In *Bush v. Gore*, the Supreme Court took issue with a statewide recount that lacked "specific standards to ensure its equal application" from ballot to ballot, precinct to precinct, or recount team to recount team when determining a voter's intent. 531 U.S. at 106. But in so doing, the Court gave its continuing imprimatur to the rule that "local entities, in the exercise of their expertise, may develop different systems for implementing elections." *Id.* at 109. Thus, even if there is some county-by-county variation in future elections, that variation does not run afoul of the Equal Protection Clause, as it was construed in *Bush v. Gore*. *See Wexler v. Anderson*, 452 F.3d 1226, 1233 (11th Cir. 2006) ("[L]ocal variety . . . can be justified by concerns about cost, the potential value of innovation, and so on." (citing *Bush*, 531 U.S. at 134)); *Lemons*, 538 F.3d at 1106 ("[I]solated discrepancies do not demonstrate the absence of a uniform standard.").[5]

---

[5] *See also Short v. Brown*, 893 F.3d 671, 679 (9th Cir. 2018) ("[D]emocratic federalism . . . permits states to serve as laboratories . . . [b]y phasing in a new election system gradually . . . California is doing just that." (quotations omitted));

### III. DEFENDANTS ARE ENTITLED TO JUDGMENT ON PLAINTIFFS' RIGHT-TO-VOTE CLAIM.

SB 7066 establishes a clear standard for judging signature mismatches, mandates training for election officials, and resolves the cure limitations relied on by this Court in granting a preliminary injunction. *See supra* § I.A; ECF 46. All that remains of Plaintiffs' right-to-vote claim, ECF 100, ¶¶ 55–59, is the notion that *any* signature-matching process for validating vote-by-mail and provisional ballots facially violates the Supreme Court's *Anderson-Burdick* standard. *See Anderson v. Celebrezze,* 460 U.S. 780 (1983); *Burdick v. Takushi,* 504 U.S. 428 (1992). Defendants are entitled to judgment on this claim.

"Recognizing that '[e]lection laws will invariably impose some burden upon individual voters,' the Supreme Court has explained that the level of scrutiny courts apply to state voting regulations should vary with the degree to which a regulation burdens the right to vote." *Wexler*, 452 F.3d at 1232 (quoting *Burdick*, 504 U.S. at 433–34) (alterations in original)). Where the State imposes only "reasonable, nondiscriminatory restrictions" on voters, the "State's important regulatory interests are generally sufficient." *Burdick*, 504 U.S. at 434 (quotations omitted).

Florida's signature-matching provisions are the kind of "reasonable, politically neutral regulations" that the U.S. Supreme Court has "repeatedly upheld."

---

*Barber v. Bennett*, Case No. 4:14-cv-02489, 2014 WL 6694451, at *5 (D. Ariz. Nov. 27, 2014) (*Bush v. Gore* does not require uniformity from county-to-county).

*Burdick*, 504 U.S. at 438. Plaintiffs characterize the burden on voters caused by Florida's signature-matching regime as the "severe burden" of "outright disenfranchisement." ECF 100, ¶ 58. Under SB 7066's amended regime, this is wrong. At most, Florida law requires vote-by-mail and provisional voters to come forward and present identification. *See supra* § I.A. The U.S. Supreme Court has rejected the suggestion that either coming forward or providing identification is a severe burden on the right to vote. *McDonald v. Bd. of Election Comm'rs*, 394 U.S. 802, 807–08 (1969) (finding no constitutional right to vote absentee); *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 202 (2008) (finding that requiring identification to vote is not a severe burden).

Even if Florida's regime causes a fraction of a percentage point of otherwise legitimate votes not to be counted, *see* ECF 100, ¶¶ 44–46 (describing the number of rejections in 2018 under the previous system), the cause of these rejections will be a voter's failure to submit a cure affidavit. This is not a severe burden on the right to vote. Any voting regulation will cause a vote not to be counted if a person does not comply with that regulation.

Further, the proper way to analyze the burden under the *Anderson-Burdick* test is to look at the effect on voters generally, not just a subset. In *Burdick*, for example, the Court confronted a challenge to Hawaii's ban on write-in votes and its cutoff date for the filing of nominating petitions. 504 U.S. at 430. The Court

14

concluded that the statute imposed only "a very limited" burden. *Id.* at 437. Similarly, in *Timmons v. Twin Cities Area New Party*, 520 U.S. 351 (1997), the Court focused on the generalized burden imposed by the challenged law, *id.* at 359, not the heightened burdens borne by a subset of those affected—there, "minor parties." *Id.* at 361–62. Here, the burden on voters generally is the burden of providing a matching signature and, in the rare instance it becomes necessary, of coming forward with identification. As discussed, this is not a severe burden. *See also Lemons*, 538 F.3d at 1104 (concluding that a signature-matching process in the referendum context did not impose a severe burden, even though it provided no opportunity to cure a mismatched signature).

Because Florida's signature-matching regime does not severely burden the right to vote, the "State's important regulatory interests" are, as a matter of law, sufficient to tilt the balance in the State's favor in this facial constitutional challenge. *Burdick*, 504 U.S. at 434 (quotations omitted). As this Court previously recognized, the State's interests in "prevent[ing] fraud," "efficiently and quickly report[ing] election results," and "promot[ing] faith and certainty in election results" are not just important, but "compelling." ECF 46, at 25 (citing *Crawford*, 553 U.S. at 225). This Court's conclusion is well-founded, and it is consistent with the conclusions reached by multiple Courts of Appeals. *See, e.g.*, *Lemons*, 538 F.3d at 1103 ("Oregon's interests in detecting fraud and in the orderly administration of elections are weighty

and undeniable."); *Kendall*, 650 F.3d at 528 ("[A] state has a strong interest in ensuring that its elections are run fairly and honestly." (quoting *Taxpayers United*, 994 F.2d at 297) (alteration in original)).

In fact, signature-matching provides a relatively straightforward and effective method of addressing these interests. Florida's signature-matching requirements for vote-by-mail, for example, exist because the legislature repealed the more burdensome notary and witness requirements. Ch. 2004-232, § 1, Laws of Fla.; Ch. 96-57, § 4, Laws of Fla. And Plaintiffs suggest no alternative to signature-matching for the State to prevent voter fraud. They ask this Court, instead, to enjoin Florida officials from confirming that vote-by-mail and provisional ballots were legitimately cast—to do away with any safeguard against abuse of the vote-by-mail process. ECF 100, at 25–26. For this reason, alone, Plaintiffs fail to state a claim. *See Fla. State Conference of NAACP v. Browning,* 569 F. Supp. 2d 1237, 1251 (N.D. Fla. 2008) (discussing Florida's "rich history of absentee-ballot fraud, including at least two elections in which courts invalidated every single absentee ballot because of widespread fraud"); *Nader v. Keith,* 385 F.3d 729, 734 (7th Cir. 2004) ("[V]oting by mail makes vote fraud much easier to commit." (citation omitted)).

## CONCLUSION

WHEREFORE the Secretary of State and the Attorney General respectfully ask this Court to grant judgment on the pleadings for Defendants under Rule 12(c).

Dated: July 1, 2019

ASHLEY B. MOODY, ATTORNEY GENERAL
STATE OF FLORIDA
*/s/ James H. Percival*
JAMES H. PERCIVAL (FBN 1016188)
*Deputy Solicitor General*
james.percival@myfloridalegal.com
EDWARD M. WENGER (FBN 85568)
*Chief Deputy Solicitor General*
edward.wenger@myfloridalegal.com
Timothy L. Newhall (FBN 391255)
SENIOR ASSISTANT ATTORNEY GENERAL
timothy.newhall@myfloridalegal.com
Elizabeth Teegen (FBN 833274)
SENIOR ASSISTANT ATTORNEY GENERAL
elizabeth.teegen@myfloridalegal.com

OFFICE OF THE ATTORNEY GENERAL
The Capitol, Pl-01
Tallahassee, Florida 32399
(850) 414-3300
(850) 410-2672 (fax)

***Counsel for the Attorney General***

Respectfully submitted by:

BRADLEY R. MCVAY (FBN 79034)
*General Counsel*
brad.mcvay@dos.myflorida.com
ASHLEY E. DAVIS (FBN 48032)
*Deputy General Counsel*
ashley.davis@dos.myflorida.com
FLORIDA DEPARTMENT OF STATE
R.A. Gray Building Suite, 100
500 South Bronough Street
Tallahassee, Florida 32399-0250
(850) 245-6536 /(850) 245-6127 (fax)

*/s/ Mohammad O. Jazil*
MOHAMMAD O. JAZIL (FBN 72556)
mjazil@hgslaw.com
GARY V. PERKO (FBN 855898)
gperko@hgslaw.com
JOSEPH A. BROWN (FBN 25765)
josephb@hgslaw.com
KRISTEN C. DIOT (FBN 118625)
kristend@hgslaw.com
HOPPING GREEN & SAMS, P.A.
119 South Monroe Street, Suite 300
Tallahassee, FL 32301
(850) 222-7500/(850) 224-8551 (fax)

***Counsel for the Secretary of State***

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULES**

The undersigned certifies that the foregoing complies with the size, font, and formatting requirements of Local Rule 5.1(C), and that the foregoing complies with the word limit in Local Rule 7.1(F); the foregoing contains 3,660 words, excluding the case style, signature block, and certificates.

**CERTIFICATE OF SERVICE**

  I HEREBY CERTIFY that a true and correct copy of the foregoing was served to all counsel of record through the Court's CM/ECF system on this 1st day of July 2019.

             */s/ James Percival*
             D<small>EPUTY</small> S<small>OLICITOR</small> G<small>ENERAL</small>