# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

DNC SERVICES CORPORATION/
DEMOCRATIC NATIONAL
COMMITTEE, *et al.*,

        Plaintiffs,

v.

LAUREL M. LEE, in her official
capacity as Florida Secretary of State, *et al.*,

        Defendant and
        Intervenors-
        Defendants.

No. 4:18-cv-00520-MW/MJF

## INTERVENOR-DEFENDANT NATIONAL REPUBLICAN SENATORIAL COMMITTEE'S MEMORANDUM REGARDING SENATE BILL 7066

The signature-match laws that Plaintiffs challenge in this lawsuit have been repealed and replaced with new laws that are not before the Court. Accordingly, this lawsuit is moot and the Court should dismiss the Amended Complaint for lack of subject-matter jurisdiction.

Plaintiffs brought this lawsuit after the close of the November 2018 election, challenging the signature-match laws that were in place at the time and applied to ballots cast in the election at issue. Specifically, Plaintiffs alleged that Florida's signature-match laws were unconstitutional because they provided no uniform,

statewide standard for local election officials to apply when they compared voters' signatures, because local officials were not trained in signature matching, and because some voters—including voters who submitted their vote-by-mail ballots after 5:00 p.m. on the second day before the election, and voters who cast provisional ballots—lacked any opportunity to submit "cure affidavits" verifying their identity after their ballots were rejected due to a signature mismatch. This Court agreed, and entered an emergency injunction requiring election officials to give voters an additional two days to cure their mismatched signatures.

Florida Senate Bill 7066 ("SB 7066") (Attachment A), recently signed into law by the Governor, responds directly to the problems this Court perceived in Florida's signature-match laws and moots this lawsuit. Among other things, SB 7066 creates a new, uniform standard for signature matching that requires local officials to reject a ballot only if they determine "beyond a reasonable doubt" that the signature accompanying the ballot does not match the signature on file for that voter. SB 7066 also requires the Secretary of State to provide uniform training on signature matching to local election officials. And SB 7066 creates a cure procedure for voters who cast provisional ballots, and for all voters extends the deadline for submitting cure affidavits to two days after an election.

What remains in this lawsuit, therefore, is a challenge to signature-match procedures set forth in a statute that no longer exists. Federal courts lack jurisdiction

to adjudicate the constitutionality of laws that are no longer in effect, so this Court should dismiss this case as moot. To the extent Plaintiffs plan to file a new lawsuit challenging Florida's new signature-match laws, the Court should make clear that they must do so now to avoid yet another round of chaotic emergency litigation in the midst of an election.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. This Lawsuit

Florida permits voters to cast ballots by mail as an alternative to voting in person. To verify the identity of citizens who vote by mail, Florida requires that a ballot be accompanied by a signature that matches the voter's signature on file; if the signatures do not match, the ballot is rejected. Fla. Stat. § 101.68. Voters may "cure" a signature mismatch by presenting election officials with an affidavit verifying their identity. Fla. Stat. § 101.68(4). A similar signature-match requirement applies to provisional ballots. Fla. Stat. § 101.048(2)(b)(1).

Two days after the November 2018 election, the Democratic Executive Committee of Florida and Bill Nelson for U.S. Senate filed this lawsuit. Complaint, ECF 1. The Complaint alleged that Florida's signature-match laws were unconstitutional because the process was "arbitrary and standardless." *E.g.*, *id.* ¶ 23. Plaintiffs sought a temporary restraining order and preliminary injunction enjoining the Secretary of State from enforcing Florida's signature-match laws, which this

Court granted. *See Democratic Exec. Comm. of Fla. v. Detzner*, 347 F. Supp. 3d 1017 (N.D. Fla. 2018).

In granting the preliminary injunction, the Court described "[t]he precise issue in this case" as "whether Florida's law that allows county election officials to reject vote-by-mail and provisional ballots for mismatched signatures—with no standards, an illusory process to cure, and no process to challenge the rejection—passes constitutional muster." *Detzner*, 347 F. Supp. 3d at 1022. The Court reasoned that "county canvassing boards are staffed by laypersons that are not required to undergo formal handwriting-analysis education or training." *Id.* at 1023. "Moreover, Florida has no formalized statewide procedure for canvassing boards to evaluate whether the signature on a vote-by-mail ballot matches the signature on file with the elections office." *Id.* The Court added that a voter might not get a "chance to cure, since curing must be done by 5 p.m. the day *before* the election," despite the fact that canvassing officials might not begin canvassing vote-by-mail ballots until "the day *after* the election." *Id.* at 1024 (emphases added). "Nor [wa]s there a cure period for provisional ballots rejected based on signature mismatch." *Id.*

The Court's preliminary-injunction order allowed voters who lacked sufficient notice to cure their ballots before the deadline an additional two days to do so. Specifically, the order required the Secretary of State to:

> issue a directive to the supervisors of elections . . . advising them (1) Florida's statutory scheme as it relates

> to curing mismatched-signature ballots has been applied unconstitutionally; and (2) in light of this Court's order, they are required to allow voters who have been belatedly notified they have submitted a mismatched-signature ballot to cure their ballots by November 17, 2018, at 5:00 p.m. The supervisors of elections shall allow mismatched-signature ballots to be cured in the same manner and with the same proof a mismatched-signature ballot could have otherwise been cured before November 5, 2018, at 5:00 p.m.

*Detzner*, 347 F. Supp. 3d at 1029, 1031–33. The Secretary complied, and the preliminary injunction expired on its own terms after the two-day extension of the cure period.

In February 2019, Plaintiffs filed their Amended Complaint. Like the original Complaint, the Amended Complaint alleges that Florida's (now-replaced) signature-match laws are unconstitutional because they are "arbitrary," and because in the 2018 elections some voters had no "opportunity to contest or cure a signature mismatch determination." Amended Complaint, ECF 100 ¶ 8. Plaintiffs allege that "the law does not provide any guidance, procedures, or criteria for [election officials] to follow when comparing signatures . . . , much less clear guidelines to ensure that voters are timely notified of any signature mismatch determinations." *Id.* ¶ 3. They further allege that "[e]lection officials are not even required to undergo any training in signature examination or any other aspect of the signature matching process," that some voters were "effectively denied an opportunity to cure any signature mismatch determinations" because the cure deadline expired before the deadline for returning

5

vote-by-mail ballots, and that "[v]oters who cast provisional ballots are provided no opportunity to cure a signature mismatch determination at any time." *Id.* ¶¶ 4–6.

## II. SB 7066's Changes To Florida's Signature-Match Laws

In May 2019, the Florida Legislature passed SB 7066. Among other things, SB 7066 repeals, replaces, and amends the signature-match provisions challenged in this lawsuit—responding directly to the problems perceived by this Court in its November 2018 order. This marks the second time that the Florida Legislature has promptly amended Florida's signature-match laws to address this Court's concerns. *See Detzner*, 347 F. Supp. 3d at 1023 (citing *Fla. Democratic Party v. Detzner*, No. 4:16-cv-607-MW/CAS, 2016 WL 6090943 (N.D. Fla. Oct. 16, 2016)).

As to the standards for signature matching, SB 7066 requires the Secretary to "[p]rovide formal signature matching training to supervisors of elections and county canvassing board members." Fla. Stat. § 97.012(17); SB 7066 § 17. Moreover, a canvassing board may reject a ballot only by a majority vote—and even then, only pursuant to a new, uniform "beyond a reasonable doubt" standard that requires election officials to err on the side of accepting questionable signatures. Fla. Stat. §§ 101.048, 101.68; SB 7066 §§ 8, 19.

SB 7066 also adds several new provisions addressing problems this Court perceived with Florida's cure process. For example, the new law extends the period for voters to cure signature mismatches until "5 p.m. on the 2nd day *after* the

election." Fla. Stat. § 101.68(4)(b) (emphasis added); SB 7066 § 19 (emphasis added). This change addresses complaints raised about the previous cure deadline, which required cure affidavits to be returned before the deadline for voters to return their ballots, and before election officials were required to begin canvassing them.

Under the new law, when a ballot is rejected because of a signature mismatch, all counties are obligated to reach out to voters using similar methods. The new law provides that, "[a]s soon as practicable, the supervisor shall" attempt to notify the voter "by e-mail," "text message," or "telephone." Fla. Stat. §§ 101.68(4)(a), 101.048; SB 7066 §§ 8, 19. Up until the day before an election, the supervisor shall attempt one of those three forms of communication "[i]n addition to" first-class mail; after that date, the supervisor "shall" provide notice by either email, text message, or telephone. Fla. Stat. §§ 101.68(4)(a), 101.048; SB 7066 §§ 8, 19.

SB 7066 also permits voters to update their signatures up until the very moment their "ballot is received by the supervisor or, in the case of provisional ballots, before the elector's ballot is cast." Fla. Stat. § 98.077(4)(a); SB 7066 § 3. Previously, a voter had to update her signature "no later" than the start of canvassing—which could occur as early as 15 days before the election. Fla. Stat. §§ 98.077(4)(a) (2018), 101.68(2)(a) (2018). Another new provision provides that if a vote-by-mail or provisional ballot is "validated following the submission of a

7

cure affidavit," the affidavit is to be "immediately process[ed] . . . as a valid request for a signature update." Fla. Stat. §§ 101.048(2)(d), 101.68(4)(g); SB 7066 §§ 8, 19.

Florida's new vote-by-mail laws include several other changes related to Plaintiffs' challenge. For example, SB 7066 adds more time for election officials to canvass ballots on the front end of an election, permitting canvassing to begin 22 days before the election—7 days earlier than the old law. *Compare* Fla. Stat. § 101.68(2)(a), *with* Fla. Stat. § 101.68(2)(a) (2018); *see also* SB 7066 § 19. And supervisors of elections are now required to send vote-by-mail ballots to voters "between the 40th and 33rd days" before presidential preference, primary, and general elections, rather than the "35th and 28th" days—ensuring that a voter who asks for a vote-by-mail ballot has more time to return it and, if necessary, submit a cure affidavit. Fla. Stat. § 101.62(4)(b); SB 7066 § 15. Moreover, to educate voters on the signature-match requirements and the importance of the cure process, Florida now requires vote-by-mail ballots to come with instructions informing voters that "the later you return your ballot, the less time you will have to cure any signature deficiencies, which is authorized until 5 p.m. on the 2nd day after the election." Fla. Stat. § 101.65; SB 7066 § 17.

A few days after the Florida Legislature passed SB 7066, this Court ordered the parties to "file memoranda detailing what effect, if any, the legislation has on this matter" "[w]ithin ten days of the Governor's signing this legislation." Order

Regarding Pending Legislation, ECF 128 (May 6, 2019). The Governor signed SB 7066 into law on June 28, 2019, Ch. 2019-162, at 40, Laws of Fla., and the new signature-match provisions took effect a few days later, on July 1, SB 7066 § 40.

## ARGUMENT

### I. This Case Is Moot

Under well-established precedent, this case is moot because of SB 7066. "Constitutional challenges to statutes are routinely found moot when a statute is amended or repealed." *Seay Outdoor Advert., Inc. v. City of Mary Esther*, 397 F.3d 943, 947 (11th Cir. 2005). Indeed, "[t]he Supreme Court has ruled in a number of cases that the enactment of new legislation which repeals or materially amends the law being challenged . . . renders the lawsuit and/or appeal moot and deprives the court of jurisdiction." *United States v. Georgia*, 778 F.3d 1202, 1204 (11th Cir. 2015). "The governing principle, as [the Eleventh Circuit has] distilled it, is that in the absence of evidence indicating that the government intends to return to its prior legislative scheme, repeal of an allegedly offensive statute moots legal challenges to the validity of that statute." *Id.* at 1205 (quotation marks omitted). "'[O]nce the repeal of an ordinance has caused [a court's] jurisdiction to be questioned, the plaintiff bears the burden of presenting affirmative evidence that its challenge is no longer moot.'" *Flanigan's Enters., Inc. of Ga. v. City of Sandy Springs*, 868 F.3d

1248, 1256 (11th Cir. 2017) (en banc) (quoting *Nat'l Advert. Co. v. City of Miami*, 402 F.3d 1329, 1334 (11th Cir. 2005)) (alteration omitted).

Here, SB 7066 repeals, replaces, and otherwise "materially amends" the statutory provisions challenged in the Amended Complaint. *See United States v. Georgia*, 778 F.3d at 1204. For example, Plaintiffs challenged the prior statutory scheme because it "neither require[d] nor provide[d] any relevant training" to election officials tasked with matching signatures, and because it "provide[d] no formal standards, criteria, or guidance for determining" whether signatures match. Amended Complaint ¶ 34; *see also*, *e.g.*, *id.* ¶ 41 ("Absent any standards or training to differentiate between signature variation and signature mismatches, the result is a crazy quilt of conflicting and diverging procedures."). Florida's new signature-match laws require the Secretary of State to provide uniform signature-match training to election officials, and include a uniform "beyond a reasonable doubt" standard for finding a signature mismatch. Fla. Stat. §§ 101.048, 101.68; SB 7066 §§ 8, 19.

Likewise, Plaintiffs' challenge to the old laws' alleged failure to "provide any opportunity for voters to cure a provisional ballot signature mismatch," Amended Complaint ¶ 32, is now moot; the new law expressly allows provisional-ballot voters to submit cure affidavits if their ballots are rejected because of signature mismatches, Fla. Stat. § 101.048; SB 7066 § 6. Plaintiffs' allegation that Florida disenfranchises

voters who return vote-by-mail ballots "after 5:00 p.m. on the day before the election ('cure deadline'), and before 7:00 p.m. on Election Day," Amended Complaint ¶ 69, is similarly moot now that the new law extends the cure period until two days after Election Day.

Nor is there any reason to think Florida will return to the signature-match scheme challenged in the Amended Complaint. *See United States v. Georgia*, 778 F.3d at 1205. It would be difficult to square such an argument with the history of Florida's signature-match laws, as the Florida Legislature has previously amended Florida's election procedures to address this Court's concerns and has not reversed course, moving consistently in the direction of enlarging the opportunity to cure signature mismatches. *See Detzner*, 347 F. Supp. 3d at 1023. Further, the revisions to Florida's signature-match laws were adopted as part of "comprehensive electoral reforms," "not merely a legislative fix" for the alleged violations asserted by Plaintiffs in this lawsuit. *United States v. Georgia*, 778 F.3d at 1205; *see also Zessar v. Smith*, 536 F.3d 789, 793–95 (7th Cir. 2008) (challenge to Illinois signature-match laws mooted by subsequent amendments to those laws).

The Court need not conclude that Florida's new election procedures are free from any conceivable constitutional problems to dismiss the Amended Complaint on mootness grounds. In *National Advertising Co.*, for example, the Eleventh Circuit refused to issue an "advisory opinion" by determining whether a new law

would "nullify *any* potential constitutional infirmities." *Nat'l Advert. Co.*, 402 F.3d at 1335. Instead, the court held that "[w]hatever defects may remain in the [challenged law] or other laws are not properly before us and we do not address them." *Id.*; *see also Coral Springs St. Sys., Inc. v. City of Sunrise*, 371 F.3d 1320, 1350 (11th Cir. 2004). Thus, the Court need not (and indeed, cannot) consider whether constitutional infirmities might exist in Florida's new signature-match laws, since the new laws are not before the Court.

In sum, this lawsuit challenges a statutory scheme that no longer exists. That means there is no live dispute before the Court, so the Court should dismiss the Amended Complaint for lack of subject matter jurisdiction.

## II. If Plaintiffs Seek To Challenge Florida's New Signature-Match Laws, They Should Do So Now

Should Plaintiffs wish to bring a new challenge seeking to enjoin Florida's revised signature-match laws, it would be imprudent for them to wait to do so until the election is well-underway. It is "as true in election law cases as elsewhere" that "a party requesting a preliminary injunction must generally show reasonable diligence." *Benisek v. Lamone*, 138 S. Ct. 1942, 1944 (2018). Moreover, last-minute challenges to election laws can have "a needlessly 'chaotic and disruptive effect upon the electoral process.'" *Id.* at 1945 (quoting *Fishman v. Schaffer*, 429 U.S. 1325, 1330 (1976) (Marshall, J., in chambers)).

The countdown to the next election has already begun. Florida's presidential preference primary is scheduled for March 2020, and vote-by-mail ballots will be mailed in early February of that year. As this Court is well aware, Florida's 2018 elections were marred and thrown into chaos by litigation in this Court and others around the State immediately after the election, and in the midst of ongoing recounts. The Court, the parties, and Florida voters should not be put in that position again. If Plaintiffs seek to challenge any constitutional deficiencies they perceive in Florida's new signature-match laws, it would be improper to time such an effort so that litigation disrupts the integrity of Florida's elections. Accordingly, NRSC respectfully requests that the Court make clear to Plaintiffs that, if they seek to challenge the new laws, the time to do so is now.

## CONCLUSION

The Court should dismiss this case as moot with instructions that any new challenge should be filed promptly.

Dated: July 8, 2019

Respectfully submitted,

/s/ Andy Bardos

| | |
|---|---|
| Thomas H. Dupree Jr.* | Andy Bardos (FBN 822671) |
| Helgi C. Walker* | George T. Levesque (FBN 555541) |
| GIBSON, DUNN & CRUTCHER LLP | GRAYROBINSON, P.A. |
| 1050 Connecticut Avenue, N.W. | Post Office Box 11189 |
| Washington, D.C. 20036 | Tallahassee, Florida 32302 |
| (202) 955-8500 | Telephone: (850) 577-9090 |
| tdupree@gibsondunn.com | andy.bardos@gray-robinson.com |
| hwalker@gibsondunn.com | george.levesque@gray-robinson.com |
| * admitted pro hac vice | |

Jason Torchinsky (VA Bar No. 47481)
HOLTZMAN VOGEL JOSEFIAK TORCHINSKY PLLC
45 North Hill Drive, Suite 100
Warrenton, VA 20186
(540) 341-8808
jtorchinsky@hvjt.law

*Attorneys for the National Republican Senatorial Committee*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(F), the undersigned certifies that this Memorandum contains 2,915 words.

/s/ Andy Bardos
Andy Bardos (FBN 822671)
GRAYROBINSON, P.A.
Post Office Box 11189
Tallahassee, Florida 32302-3189
Telephone: 850-577-9090
andy.bardos@gray-robinson.com

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing was served to all counsel of record through the Court's CM/ECF system on this 8th day of July, 2019.

/s/ Andy Bardos
Andy Bardos (FBN 822671)
GRAYROBINSON, P.A.
Post Office Box 11189
Tallahassee, Florida 32302-3189
Telephone: 850-577-9090
andy.bardos@gray-robinson.com