[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-14758
_____

D.C. Docket No. 4:18-cv-00520-MW-MJF


DEMOCRATIC EXECUTIVE COMMITTEE OF FLORIDA,
BILL NELSON FOR U.S. SENATE,

Plaintiffs-Appellees,


versus


NATIONAL REPUBLICAN SENATORIAL COMMITTEE,

Intervenor Defendant-Appellant.
_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(February 19, 2020)

Before JORDAN, NEWSOM, and GRANT, Circuit Judges.

PER CURIAM:

Two days after Election Day in 2018, the plaintiffs in this case challenged the signature-match provisions of Florida's mail-in-voting and provisional voter laws. But Florida has now changed those laws—which all parties agree renders the present case moot. The remaining contested issues before us involve whether we should vacate the prior preliminary opinions in this case—and whether we even retain jurisdiction to order vacatur if the intervenor-appellant, the National Republican Senatorial Committee, no longer has standing in the case. We conclude that we retain jurisdiction to consider the proposed motions for vacatur. We decline to vacate the prior opinions in this case, however, because under our precedent those opinions will not have negative collateral effects on any party.

## I.

The Florida election for United States Senate in 2018 was a close race—so close that the margin triggered a statewide recount. During that recount, the Democratic Executive Committee of Florida and a campaign organization, Bill Nelson for U.S. Senate, together filed a constitutional challenge to the signature-match requirements of Florida's vote-by-mail statute. *See* Fla. Stat. § 101.62 (2016) (permitting mail-in voting); Fla. Stat. § 101.65 (2016) (requiring mail-in voters to sign a voter's certificate on the back of the mail-in envelope); Fla. Stat. § 101.68 (2017) (authorizing voting officials to compare the signature on the envelope with a signature on file and to reject votes where the signature does not match). The vote-by-mail statute contained a cure provision giving voters who learned that their votes had been blocked for signature mismatch until "5 p.m. one day before the election" to verify their identities by "submitting a cure affidavit

and an accepted form of identification." *Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1316 (11th Cir. 2019) (citing Fla. Stat. § 101.68(4)).

The plaintiffs also challenged the application of Florida's law allowing prospective voters who could not prove their eligibility to cast provisional ballots. *See* Fla. Stat. § 101.048(1) (2008).  Like mail-in votes, provisional votes were subject to a signature-match provision. *Id.* § 101.048(2)(b).  Unlike mail-in votes, however, provisional ballots rejected because of signature mismatch could not be cured after the fact.

The plaintiffs filed suit against the Florida Secretary of State, alleging that these signature schemes were unconstitutional under the Equal Protection Clause of the Fourteenth Amendment.  In their view, the signatures were compared without a standard, making the decision to count the vote (or not) arbitrary. *See Lee*, 915 F.3d at 1316–17.  The plaintiffs asked for an emergency injunction requiring officials to count "every vote-by-mail and provisional vote that had been rejected" due to signature mismatch. *See id.* at 1317.  The National Republican Senatorial Committee sought and was granted leave to intervene on the defendants' behalf (the Florida Attorney General also intervened).  The district court entered a modified preliminary injunction allowing the "ballots of those voters who were belatedly notified of signature mismatch" to be counted, provided that "those voters timely verified their identities by following the normal cure procedures." *Id.* (citing *Democratic Exec. Comm. of Fla. v. Detzner*, 347 F. Supp. 3d 1017, 1032 (N.D. Fla. 2018)).

Given the effect that the preliminary injunction might have on the just-held election, the NRSC sought an emergency stay of the district court's preliminary injunction on the same day that it was entered.  The defendants also entered an appeal.  Later that same day a motions panel of this Court denied the emergency stay by a 2-1 vote without hearing argument.  The preliminary injunction expired by its own terms two days later.

In February of 2019—nearly three months after issuing its denial of the emergency stay—the motions panel issued a lengthy published opinion explaining its denial of the emergency stay (alongside a dissenting opinion).  *See generally id.* At that point in time, litigation was ongoing in the trial court over the signature-match provisions.  We asked the parties to file briefs as to whether the underlying appeal of the preliminary injunction was now moot.

In June of 2019, though, the Governor of Florida signed into law S.B. 7066, which significantly amended the signature-match provisions at issue in this case.[1] After the bill was enacted, the plaintiffs voluntarily dismissed their lawsuit. Florida's Secretary of State and Attorney General then successfully moved to dismiss their appeal of the district court's preliminary injunction order.

The sole remaining appellant, the NRSC, agreed with the appellees that the case was now moot.  Still, the NRSC filed motions with this Court asking us to vacate the district court's order granting a preliminary injunction as well as our prior stay-panel opinion under the doctrine of *United States v. Munsingwear, Inc.*,

---

[1] Among other changes, S.B. 7066 provided for formal signature-match training; it also provided that both rejected mail-in votes and provisional votes may be cured until 5 p.m. on the second day after the election.

which states that vacatur may be appropriate when the intervening mootness of a case prevents review of a decision on appeal.  *See* 340 U.S. 36, 41 (1950) (explaining that vacatur is appropriate "to prevent a judgment, unreviewable because of mootness, from spawning any legal consequences").  We carried the motions with our consideration of whether or not the appeal was moot.

## II.

### A.

The plaintiffs first suggest that we are unable to grant the requested motions for vacatur because the NRSC lacks standing to bring an appeal (following the Florida defendants' decision to withdraw their appeal).  After all, they argue, to "appeal a decision that the primary party does not challenge, an intervenor must independently demonstrate standing."  *Virginia House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1951 (2019).  And because a non-specific interest in defending the validity of a generally-applicable state law is not sufficient to confer standing, the plaintiffs argue that the appeal and the motions for vacatur should be dismissed for lack of standing.  *See Hollingsworth v. Perry*, 570 U.S. 693, 706 (2013).

But the NRSC asserted more than a generalized interest in upholding the validity of a state law.  Under well-established circuit precedent, organizations possess standing to challenge election laws if they show "that they will have to divert personnel and time to educating potential voters on compliance with the laws."  *Arcia v. Florida Sec'y of State*, 772 F.3d 1335, 1341 (11th Cir. 2014).  The same is necessarily true of orders, like the district court's preliminary injunction in

this case, that modify election laws.  At the time of the district court's entry of a preliminary injunction in this case, the NRSC's preferred candidate was winning a statewide election.  The relief instituted by the preliminary injunction permitted a batch of new votes to be added to the previous totals, potentially threatening the election of that preferred candidate.  The NRSC alleges that it responded by diverting personnel and time to educating voters about the modified law (presumably to ensure that voters supporting the NRSC's preferred candidate were as well-informed about the district court's order as those supporting the plaintiffs' preferred candidate).  *Cf. id.*  Far from "piggy-backing" on the state-defendants' standing, then, the NRSC has asserted its own standing in the case.

To the extent that the plaintiffs allege that the NRSC *now* lacks an interest in the resolution of the underlying dispute, that question concerns the doctrine of mootness.  But the NRSC agrees that the underlying dispute in this case is moot— the question is whether, given that the case is moot, the preliminary orders in this case should be vacated.  Granting *Munsingwear*-style relief always requires appellate courts to consider whether vacatur is appropriate when the requirements of Article III are no longer met because one party is no longer able to obtain relief on the merits.  As the Supreme Court has stated, "reason and authority refute" the "notion that a federal appellate court may not take any action with regard to a piece of litigation once it has been determined that the requirements of Article III no longer are (or indeed never were) met."  *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 21 (1994); *see also* 28 U.S.C. § 2106.  That logic would hold appellate courts "powerless to award costs" or "even to enter an order of dismissal"

in "cases that become moot while awaiting review." *Bancorp*, 513 U.S. at 21.  We therefore conclude that we retain jurisdiction to consider the NRSC's motions to vacate the prior opinions in this case.

B.

We now consider the NRSC's request that we vacate our own prior opinion in this case, which denied a motion for an emergency stay of the district court's preliminary injunction.  *See Lee*, 915 F.3d at 1315.  The NRSC requests vacatur of that opinion to ensure that it does not spawn "any legal consequences."  *See CAMP Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1277 (11th Cir. 2006) (citing *Munsingwear*, 340 U.S. at 41).

The equitable remedy of vacating prior opinions in cases that become moot is driven by the principle that a "party who seeks review of the merits of an adverse ruling, but is frustrated by the vagaries of circumstance, ought not in fairness be forced to acquiesce in the judgment."  *Bancorp*, 513 U.S. at 25.  The NRSC asks for vacatur of the stay-panel opinion in this case due to its concern that, if the opinion is not vacated, then the organization will be "forced to acquiesce" in the reasoning of that opinion.  But fortunately for the NRSC, no such acquiescence will be required.  Under recent precedent in this Circuit, vacatur of a prior stay-panel opinion once a case becomes moot on appeal is inappropriate— precisely because that stay-panel opinion *cannot* spawn binding legal consequences regarding the merits of the case.  *See Hand v. DeSantis*, __ F.3d __, 2020 WL 113432, at *2 n.5 (11th Cir. Jan. 10, 2020).

In *Hand*, we adopted the reasoning that vacatur of a prior stay-panel opinion was not required once a case became moot because orders concerning stays are "not a final adjudication of the merits of the appeal" and accordingly have "no res judicata" effect. *Id.* (quoting *FTC v. Food Town Stores, Inc.*, 547 F.2d 247, 249 (4th Cir. 1977)). To the extent that vacatur is requested with regards to the stay-panel opinion in this case, then, it is not required: under the rule announced in *Hand*, the necessarily tentative and preliminary nature of a stay-panel opinion precludes the opinion from having an effect outside that case.[2]

C.

The NRSC also asks that we vacate the district court's prior order in this case implementing a preliminary injunction. We note that the rule recently announced in *Hand* does not apply to appeals of preliminary injunctions. Generally, when "a case becomes moot after the district court enters its judgment but before this court has issued a decision, we are divested of jurisdiction and must dismiss the appeal and vacate the underlying judgment." *Brooks v. Georgia State Bd. of Elections*, 59 F.3d 1114, 1122 (11th Cir. 1995) (quoting *Ethredge v. Hail*, 996 F.2d 1173, 1175 (11th Cir. 1993)). "In the case of interlocutory appeals, however, 'the usual practice is just to dismiss the appeal as moot and not vacate the order appealed from.'" *Id.* (quoting *In re Tax Refund Litig.*, 915 F.2d 58, 59 (2d Cir. 1990)). We have previously "dismissed moot appeals without vacating the

---

[2]*Hand* may set up an either/or proposition, so that in a rare case where a party could identify any ruling within a stay-panel opinion that *would* have precedential effect beyond the preliminary decision on the stay, then vacatur may be warranted if the case were to become moot. *Cf. Munsingwear*, 340 U.S. at 41. This case does not involve such a scenario, so we do not address it.

underlying district court order in cases involving appeals from preliminary injunctions and interlocutory orders," and see no reason to divert from that practice here. *See id.*

\*        \*        \*

The underlying dispute in this case is moot, and the preliminary opinions in the case are precluded from spawning negative collateral consequences. We therefore **DENY** the motion to vacate the district court's order and opinion implementing a preliminary injunction, **DENY** the motion to vacate our previous opinion denying a stay, and **DISMISS** the appeal as moot.

# UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

February 19, 2020

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number:  18-14758-QQ
Case Style:  Democratic Executive Committee, et al v. National Republican Senatorial
District Court Docket No:  4:18-cv-00520-MW-MJF

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Andrea G. Ware, QQ at (404) 335-6218.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Jeff R. Patch
Phone #: 404-335-6151

OPIN-1 Ntc of Issuance of Opinion